416 A.2d 498

**COMMONWEALTH of Pennsylvania**

v.

**William STARKS, Appellant.**

Supreme Court of Pennsylvania.

Submitted April 25, 1980.

Decided July 3, 1980.

---

Louis Lipschitz, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Division, Andrew B. Cohn, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

On October 8, 1974, appellant William Starks was convicted by a jury of murder of the first degree and unlawfully carrying a firearm. He was sentenced to concurrent prison

terms of life for the murder conviction and two and one-half to five years for the firearms conviction. On appeal, appellant claimed that his motion for mistrial on the ground of prosecutorial misconduct was improperly denied. This Court agreed with appellant and accordingly granted him a new trial. *Commonwealth v. Starks*, 479 Pa. 51, 387 A.2d 829 (1978).

Appellant now contends by pre-trial motion that retrial would impermissibly place him twice in jeopardy. Appellant correctly states that prosecutorial misconduct which rises to the level of "overreaching" will bar retrial. See *Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 52 L.Ed.2d 80 (1977). Appellant claims here that the prosecutorial misconduct at his first trial, which resulted in this Court vacating judgments of sentence, constitutes prosecutorial overreaching. The court of common pleas disagreed and denied appellant's motion. We affirm.[1]

The United States Constitution, amendment V declares that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb . . . ." Pennsylvania likewise extends such protection to the accused. See Pa.Const., art. I, § 10; *Commonwealth v. Campana*, 455 Pa. 622, 314 A.2d 854 (1974). This proscription against double jeopardy means that no one should be harassed by successive prosecutions for a single wrongful act and that no one should be punished more than once for the same offense. See *United States v. Wilson*, 420 U.S. 332, 342–43, 95 S.Ct. 1013, 1021, 43 L.Ed.2d 232 (1975); Note, *Statutory Implementation of Double Jeopardy Clauses: New Life for a Moribund Constitutional Guarantee*, 65 Yale L.J. 339, 339–40 (1956). There can be no doubt that this constitutional protection is fundamental to our system of criminal justice, for, as the United States Supreme Court explained:

---

1. Under *Commonwealth v. Haefner*, 473 Pa. 154, 373 A.2d 1094 (1977) and *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977) (plurality opinion), a defendant may appeal an order denying his pre-trial motion for relief under the double jeopardy clause.

> "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

*Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957); see *Benton v. Maryland*, 395 U.S. 784, 795–96, 89 S.Ct. 2056, 2063, 23 L.Ed.2d 707 (1969) (constitutional guarantee against double jeopardy applies to states because of its "fundamental nature"); *Commonwealth v. Mills*, 447 Pa. 163, 286 A.2d 638 (1971). As Mr. Chief Justice Burger wrote, a criminal proceeding "imposes heavy pressures and burdens—psychological, physical, and financial—on a person charged. The purpose of the Double Jeopardy Clause is to require that he be subject to the experience only once 'for the same offence.' " *Breed v. Jones*, 421 U.S. 519, 530, 95 S.Ct. 1779, 1786, 44 L.Ed.2d 346 (1975).

Generally the double jeopardy clause does not bar retrial of a defendant who obtains a new trial upon his request for a mistrial. See *Lee v. United States*, supra at 32, 97 S.Ct. at 2147. As the Supreme Court explained in *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971) (plurality opinion) (Harlan, J.):

> "[W]here circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error."

This restriction on the double jeopardy clause, however, is not without its own limitations. The Supreme Court has held that double jeopardy will bar retrial if the defendant sought the mistrial as a result of prosecutorial misconduct amounting to overreaching. See *Lee v. United States*, supra at 32, 97 S.Ct. at 2147; *United States v. Dinitz*, 424 U.S. 600,

611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976). So too, where, on prosecutorial misconduct grounds, a defendant unsuccessfully moves for a mistrial but then obtains appellate relief, the double jeopardy clause will not bar retrial unless the misconduct amounts to overreaching. Our inquiry here, therefore, is, as the Commonwealth agrees, whether the prosecutorial misconduct at appellant's first trial, which we held to be reversible error, see *Commonwealth v. Starks*, supra, constitutes prosecutorial overreaching.

The United States Supreme Court has enunciated principally two types of prosecutorial overreaching. First there is the prosecutorial misconduct which is designed to provoke a mistrial in order to secure a second, perhaps more favorable, opportunity to convict the defendant. See *United States v. Dinitz*, supra at 611, 96 S.Ct. at 1081. Second there is the prosecutorial misconduct undertaken in bad faith to prejudice or harass the defendant. See *Lee v. United States*, supra at 32, 97 S.Ct. at 2147; *United States v. Dinitz*, supra at 611, 96 S.Ct. at 1081–82. In contrast to prosecutorial error, overreaching is not an inevitable part of the trial process and cannot be condoned. It signals the breakdown of the integrity of the judicial proceeding, and represents the type of prosecutorial tactic which the double jeopardy clause was designed to protect against.

This Court has expressly announced that in "advocating the cause for this Commonwealth, prosecutors are to seek justice, not only convictions." *Commonwealth v. Cherry*, 474 Pa. 295, 301, 378 A.2d 800, 803 (1977) (citations omitted). Indeed, a prosecutor

"is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a particular and very definite sense the servant of the law  .   .   .  ."

*Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). This Court in holding that the prosecutorial misconduct at appellant's first trial was reversible error, identified two instances of misconduct in the prosecutor's closing argument. First, we found that the prosecutor's expressions of personal belief concerning a critical issue in the case, the voluntariness of appellant's confession, violated our standards of permissible conduct.[2] See *Commonwealth v. Starks,* supra 479 Pa. at 57, 387 A.2d at 832. Second we found that the prosecutor unnecessarily emphasized the involvement of drugs in the case.[3] See id., 479 Pa. at 57–58, 387 A.2d at 832–33.

**2.** As we stated in *Starks,* with respect to the prosecutor's expressions of personal belief:

"In response to [the defendant's charge that his statement was coerced by the police] . . . , the assistant district attorney in his closing address to the jury stated: '. . . think the worst about Detective Morris and think the worst about Detective Richardson, but for Christ's sake, you cannot believe they were born yesterday.' Again, he adjured, 'If you believe that Detective Richardson and Detective Morris engaged in beating this defendant and beat him into signing a paper that they prepared, that were not the words of this defendant, I want you to understand, I mean, I want you to send him home . . . God help us if the police are going to do what the defendant says. If that is what you believe, ladies and gentlemen, not only let the defendant go, but I would be concerned about staying around myself.' "

**3.** As we explained in *Starks,* with respect to the prosecutor's statements about drugs:

"[T]hroughout the closing argument, the prosecutor repeatedly spoke of the defendant as a 'pusher' and a 'dealer' :

'Don't you think that would be fairer, be fairer to the cocaine pusher, to the cocaine distributor. Don't you think that would be fairer?' (Trial Record at 482–483)

'When the police have a cocaine pusher, cocaine distributor who is involved in the killing of a cocaine pusher on the streets, because the pusher welshed on the deal involving a shipment of cocaine, if you believe that fairness after the defendant has been duly warned, not just by the police but by a defense lawyer that he does not have to talk if he does not want to. . . .' (Trial Record at 481)

The drug issue was further emphasized when the assistant district attorney stated:

'So, I don't come to this case with what I regard as extraneous principles of philosophy. I come to this case with the cruel, hard knowledge that it is just not this defendant who is supplying the drugs, it is just not Benny Fields who is out there pushing them, it is that somewhere, and I know it, I have seen them, there is some

■ Although these instances of misconduct cannot be and were not condoned, and clearly required reversal of appellant's convictions, they do not constitute overreaching. The prosecutor's emphasis of drug involvement was in part a response to the intemperate closing argument of defense counsel, see ABA Standards Relating to The Prosecution Function and The Defense Function § 7.8 (Approved Draft, 1971) (Defense Argument to Jury), and in part an attempt to explain appellant's choice of vocabulary in his confession. Moreover, appellant's confession suggested that a drug transaction supplied the motive for the murder, and to this extent the issue of drug use was properly before the jury. In light of these circumstances, it must be concluded that the prosecutor's emphasis on drug use had some basis in trial strategy, and cannot be considered to be an attempt to provoke a mistrial or a bad faith attempt to prejudice appellant.

■ So too, the prosecutor's expressions of personal belief as to the voluntariness of appellant's confession, while error and impermissible, do not constitute overreaching. The voluntariness issue was properly before the jury, and the prosecutor's statements themselves simply do not suggest a bad faith effort to prejudice or an intent to provoke mistrial. Accordingly, we agree with the court of common pleas that the prosecutorial misconduct in this case, though impermissible, does not amount to prosecutorial overreaching and that the Commonwealth is therefore not precluded from retrying appellant. Accord *Commonwealth v. Lee*, 490 Pa. 346, 416 A.2d 503 (1980).

Order affirmed and case remanded for appropriate proceedings.

child whose body is being polluted right now by those drugs, right now. Don't you see, that sight, the sight of that child, that affects my view of what is fair. The sight of that child does have an influence on me, but that kind of fairness has no place in the case. This business about the bankers and the like, all that philosophy has no place in the case. The law is what governs the facts as you find them.' (Trial Record at 482–483)"

LARSEN, J., concurs in the result.

NIX, J., filed a dissenting opinion.

NIX, Justice, dissenting.

Without evaluating the jurisdictional predicate for this appeal, the majority opinion concerns itself with determining whether the prosecutorial misconduct constituted "prosecutorial overreaching." Since I believe that this Court is without jurisdiction to entertain the merits of this appeal, I must dissent.

In *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977), we held that after a mistrial had been declared, and prior to the commencement of a second trial, the defendant has the right to an interlocutory appeal from the denial of his pretrial motion to dismiss on the grounds that the new trial will violate his double jeopardy rights.[1] *See also, Commonwealth v. Haefner*, 473 Pa. 154, 373 A.2d 1094 (1977); *Commonwealth v. Potter*, 478 Pa. 251, 386 A.2d 918 (1978). In *Commonwealth v. Hogan*, 482 Pa. 333, 393 A.2d 1133, we distinguished the right to interlocutory appeals from orders denying motions to dismiss in cases where the trial judge declared a mistrial (*Bolden*), from cases where a reviewing court granted a new trial. We recognized that:

.  .  . mistrials present a distinctly different consideration because the right of the accused to have judgment passed upon by the empanelled tribunal has been frustrated. Such is not the case where the verdict has been rendered and is set aside at the behest of the defendant

---

1. In *Commonwealth v. Bolden*, 472 Pa. 602, 652, 373 A.2d 90, 114 (1977) (Nix, J., dissenting opinion joined by O'Brien, J.), this writer expressed a view contrary to the majority opinion. I warned that interlocutory appeals from the denial of the defendant's pretrial motion to dismiss the indictment on double jeopardy grounds would be inefficient, time consuming and prejudicial to the parties to the controversy. Moreover, I predicted that permitting an interruption of an ongoing judicial proceeding would invite extensive delays and have a disruptive effect on the continuity of the action. *See also, Commonwealth v. Bronson*, 482 Pa. 207, 211, 393 A.2d 453, 454 (1978) (Nix, J., dissenting opinion joined by O'Brien, J.). Today's opinion exacerbates the majority's holding in *Bolden* by an unwarranted expansion of the double jeopardy clause.

upon a finding of trial error. The very core of the protection offered by the double jeopardy clause is the assurance of an adjudication by a tribunal having jurisdiction to hear and determine the cause and the finality of that judgment. *United States v. Oppenheimer*, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916). Thus, mistrials touch upon the very heart of the double jeopardy protection since, in those cases, the original tribunal is prevented from passing judgment. *Id.*, 482 Pa. at 341, 393 A.2d at 1137.

We also explained that when a reviewing court finds reversible prosecutorial misconduct upon the complaint of the defendant, whether the government must cease its attempts to try the accused is not a double jeopardy bar, but a due process issue. We reasoned that:

> In such an instance, the flexible and evolving concept of due process—rather than the historically rigid rule of double jeopardy—would be the standard against which would be measured the propriety of allowing the government yet another chance to try the accused. *Id.*, 482 Pa. at 343–44, 393 A.2d at 1138.

*See also, Gore v. United States*, 357 U.S. 386, 392, 78 S.Ct. 1280, 2 L.Ed.2d 1045 (1957). Thus, in *Hogan* we affirmed the order denying the motion to dismiss since the thrust of the appeal did not involve an interlocutory appealable double jeopardy issue.

The majority opinion ignores our holding in *Hogan* and assumes jurisdiction over an appeal which involves due process, not double jeopardy considerations. Here, the appellant had the right to a judgment passed on by the empanelled tribunal. The appellant sought to appeal his conviction on the ground of prosecutorial misconduct and this Court ordered a new trial. Under these circumstances, double jeopardy poses no bar to prosecution.

I would dismiss the instant appeal since the appellant raises a non-appealable interlocutory due process issue. *Commonwealth v. Klobuchir*, 486 Pa. 241, n. 5, 405 A.2d 881, n. 5 (1979).