426 A.2d 620

**COMMONWEALTH of Pennsylvania,**

v.

**Ronald SIMMS, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 10, 1980.

Filed May 15, 1981.

Petition for Allowance of Appeal Denied Aug. 31, 1981.

Petition for Allowance of Appeal Denied Oct. 9, 1981.

Leonard I. Sharon, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before HESTER, BROSKY and VAN der VOORT, JJ.

BROSKY, Judge:

On February 15, 1979, appellant, Ronald Simms, and codefendant, Phillip Mills, were arrested and charged with possession and delivery of a controlled substance[1] in violation of the Drug Act.[2]

On the first day of the jury trial of Simms and Mills, counsel for Simms requested, and was granted, a mistrial because of a prejudicial statement made by the prosecutor during his opening remarks to the jury. The central issue for our determination is whether reprosecution is barred by the double jeopardy clause of the United States Constitution.[3] The trial court held that reprosecution was not barred because there was no indication that the prosecutor was acting in bad faith or was attempting to harass or prejudice Simms, the standard to be applied where a defendant has been granted a mistrial at his request and seeks to bar retrial on double jeopardy grounds. We so hold and affirm.

The request for a mistrial resulted here from the assistant district attorney's statement that, upon being arrested, Phillip Mills had pointed to Simms and stated that Simms had

1. Ronald Simms was charged with possession of cocaine [Count 1]; possession of phenmetrazine [Count 2]; and delivery of cocaine to Phillip Mills [Count 3]. Mills was charged only with possession of cocaine.

2. Act of April 14, 1972, P.L. 233, No. 64, § 1, effective June 14, 1972, 35 P.S. § 780–113(d).

3. U.S. Constitution, Amendment V. The Commonwealth of Pennsylvania likewise extends such protection to the accused. See Pa. Const., Art. I, § 10. "The Pennsylvania double jeopardy clause differs only stylistically from that contained in the Fifth Amendment." *Commonwealth v. Hogan*, 482 Pa. 333, 342, 393 A.2d 1133 (1978), quoting *Commonwealth v. Campana*, 455 Pa. 622, 314 A.2d 854 (1974).

given him the drugs. Defense counsel for Simms argued that in addition to this statement constituting impermissible hearsay, it violated Simms' constitutional right to confrontation and cross-examination,[4] since counsel for Mills had indicated that he did not intend to put his client on the stand. The underlying rationale of the double jeopardy clause is that

> [t]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. *Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204 (1957).

It has been said that the clause "[e]mbraces the defendant's valued right to have his trial completed by a particular tribunal." *United States v. Jorn*, 400 U.S. 470, 484, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971). When the first proceeding ends in a mistrial, the defendant's right to have his trial completed by the tribunal has been frustrated. In this context, the conduct of the prosecutor, as an agent of the state, is a relevant consideration.

Generally, when a mistrial is granted at the request of the defendant, there is no bar to reprosecution. *United*

4. Defense counsel for Simms argued that the statement of Mills inculpating Simms violated *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), in which the United States Supreme Court held that the defendant's conviction at a joint trial had to be set aside because the jury had heard the codefendant's confession inculpating the defendant, even though a cautionary instruction to the jury to disregard the confession had been given. The *Bruton* decision confirmed that the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him.

> [T]he government should not have the windfall of having the jury be influenced by evidence against a defendant which, as a matter of law, they should not consider but which they cannot put out of their minds.

Id. at 129, 88 S.Ct. at 1624, 20 L.Ed.2d. at 481, quoting Justice Frankfurter's dissent in *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

*States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *United States v. Jorn*, supra; *Commonwealth v. Africa*, 281 Pa.Super. 419, 422 A.2d 539 (1980).

The exception is where the mistrial request

[i]s necessitated by prosecutorial error committed intentionally to force the accused to move for mistrial, thereby affording the prosecution another, possibly more favorable opportunity to convict. *Commonwealth v. Mitchell*, 488 Pa. 75, 78, 410 A.2d 1232, 1234 (1980).

Conversely, the United States Supreme Court has long held that:

[W]here circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error. *United States v. Dinitz*, supra, quoted in *Commonwealth v. Bolden*, 472 Pa. 602, 607, 373 A.2d 90, 107 (1977).

In *Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977), the Supreme Court expanded its holding in *Dinitz*, supra, stating that "[o]nly if the underlying error was 'motivated by bad faith or undertaken to harass or prejudice . . .' " would there be any barrier to retrial, quoting *United States v. Jorn*, supra. Id. at 33, 97 S.Ct. at 2147, 53 L.Ed.2d at 89.

In two recent cases, our Supreme Court stated that the test to be applied in cases such as the instant case is whether the prosecutor (or the trial judge) engaged in either "*intentional* or bad faith overreaching." *Commonwealth v. Starks*, 490 Pa. 336, 416 A.2d 498 (1980); *Commonwealth v. Lee*, 490 Pa. 346, 416 A.2d 503 (1980) (emphasis added).

[I]n contrast to prosecutorial error, overreaching is not an inevitable part of the trial process and cannot be condoned. It . . . represents the type of prosecutorial tactic which the double jeopardy clause was designed to protect against. *Commonwealth v. Starks*, supra, 490 Pa. 336, 416 A.2d 498.

Despite these recent Pennsylvania Supreme Court rulings, appellant argues that the test to be applied is the two-pronged "intentional *or* grossly negligent misconduct" test of *Commonwealth v. Bolden,* supra:

> [I]f a mistrial is ordered on defendant's motion due to intentional or grossly negligent misconduct on the part of the prosecutor or judge, reprosecution is barred by the double jeopardy clause. Id., 472 Pa. at 642, 373 A.2d at 109.

In *Bolden,* Mr. Justice Roberts, speaking for the court, noted that "[i]t is extremely difficult to establish that prosecutorial or judicial error was intentional;" that "[a] defendant's rights may not be adequately protected if he is required to prove that the error was intentional." Id., 472 Pa. at 640, 373 A.2d at 108, 109.

The holding in *Bolden* was eroded by the decision in *Commonwealth v. Potter,* 478 Pa. 251, 386 A.2d 918 (1978), in which former Justice Pomeroy, in an opinion joined by former Chief Justice Eagen and Mr. Justice O'Brien (now Chief Justice),[5] held that "[r]etrial should be barred when there is found to have been prosecutorial misconduct *intended* to provoke mistrial requests. . . ." Id., 478 Pa. at 267, 386 A.2d at 926 (emphasis added).[6]

In *Commonwealth v. Gravely,* 486 Pa. 194, 404 A.2d 1296 (1979), our Supreme Court, per former Chief Justice Eagen, analyzed the conduct of the prosecution and concluded that

**5.** The judgment of sentence was affirmed by an equally divided court. Messrs. Justice Roberts and Nix and Justice Manderino filed separate opinions in support of reversal. In their opinions in support of reversal, Mr. Justice Roberts and Justice Manderino argued for a "gross negligence standard." Mr. Justice Nix did not speak to the issues in his opinion in support of reversal. Thus, appellant incorrectly states in his brief that Mr. Justice Nix in *Potter* supported retention of the two-pronged *Bolden* test.

**6.** In the course of his opinion, former Justice Pomeroy stated:
[A]ppellant would have us read the word "overreaching" as embracing not only deliberate prosecutorial misconduct, as defined in *Dinitz* [citation omitted], but also "recklessness" or "gross negligence" of the prosecuting attorney. . . . We think that such a standard is unwarranted. Id., 478 Pa. at 262, 386 A.2d at 923.

it did not evidence "[m]isconduct designed to secure a more favorable opportunity to convict the accused." Id., 486 Pa. at 203, 404 A.2d at 1300 (emphasis added). The choice of the word "designed" clearly indicates that the court was employing in its analysis an "intentional" rather than a "gross negligence" standard, in accord with former Justice Pomeroy's opinion in *Potter*, supra.

In *Commonwealth v. Perry*, 270 Pa.Super. 412, 411 A.2d 786 (1980), we held that *Gravely* reaffirmed that *Bolden* no longer expresses the views of our Supreme Court regarding the proper test to be applied. The proper standard, we stated, is the intentional misconduct standard of *Lee v. United States*, supra.

■ Therefore, we hold that for purposes of our analysis here, the test to be applied is whether the prosecutor's opening statement constituted intentional or bad faith "overreaching" so as to bar reprosecution of appellant.

■ Appellant's main contention is that the prosecutor's reference to codefendant Mills' incriminatory statement amounted to "an indifference to present legal duty and utter forgetfulness of legal obligations," the legal definition of "gross negligence."

Since we have determined that we must analyze the prosecutor's conduct here in light of intentional conduct rather than negligence, we find this argument to be without merit. Appellant does not assert that the assistant district attorney made the statement intentionally to provoke a mistrial request. Nor does appellant maintain that the assistant district attorney would have had any motive for so doing.

Thus, we are not confronted here with a situation in which the prosecutor wanted to "bail out" before final judgment because things were going badly for the Commonwealth. In fact, the unusual nature of this case lies in the fact that the mistrial was requested in the first few minutes of the trial,[7]

7. The record shows that the trial began at 11:20 a.m. The motion for mistrial was granted at 1:45 p.m., apparently after the lunch break.

long before the prosecutor could have had in his mind the thought of provoking a mistrial because of things not going his way. In the same vein, it is equally clear from an examination of the record that the prosecutor would have had little reason to seek a second chance to prosecute, since the evidence against Simms and Mills was strong.[8]

There is no doubt that the assistant district attorney erred by making reference to Mills' statement, both because it was hearsay and because it violated appellant's Sixth Amendment right of confrontation and cross-examination. "In making his opening statement, the prosecutor should confine his remarks to evidence he intends to offer *which he believes in good faith*[9] will be available and admissible ..." ABA Project on Standard for Criminal Justice, Standards relating to the Prosecution and Defense Function (Apprvd. Draft, 1971), § 5.5 (emphasis added). The trial judge, who was in the best position to observe first hand the prosecutor's conduct, found that he was not acting in bad faith and that he believed in good faith that his statement qualified under an exception to the hearsay rule,[10] although, in the opinion of the court, this belief was erroneous.

This would indicate that the trial lasted but a very short time before the mistrial request was made.

**8.** Here, it was the Commonwealth's burden of proof to show possession and delivery. As defined by the Drug Act, delivery is "the actual, constructive or attempted transfer from one person to another of a controlled substance...." 35 P.S. § 780–102. Here, the two undercover narcotics officers had received information from a reliable informant that appellant was dealing drugs from his car in the Hill District section of Pittsburgh. The officers drove to the scene in an unmarked car, where they observed Simms transfer the cocaine to Mills. It seems clear that the Commonwealth, having two eyewitnesses to the occurrence, would have had reason to feel confident that it could prove possession and delivery, based on the facts as indicated above.

**9.** See *Commonwealth v. Rios*, 246 Pa.Super. 479, 371 A.2d 937 (1977), in which we held that despite the assistant district attorney's improper reference to suppressed statements, he had acted in good faith and that as a result, reprosecution was not barred.

**10.** The assistant district attorney contended that it was an "excited utterance" or in the alternative, part of the *res gestae.* There is some

We find that while the prosecutor should have known that his statement was improper,[11] viewing his conduct in light of the totality of the circumstances, that it was not designed or intended to provoke a mistrial. As we stated in *Commonwealth v. Thomas*, 270 Pa.Super. 375, 411 A.2d 767 (1979), with regard to a question by the prosecutor which, because of its prejudicial nature, tainted the case and required a mistrial: "The assistant district attorney's conduct may be accounted for as the product of an excess of zeal and as a desire to over try the issue. . . ." Id., 270 Pa.Super. at 379, 411 A.2d at 769. We concluded in *Thomas* that the question could not be attributed to malice nor deliberately "[c]alculated to invite the mistrial in order to secure another, possibly more favorable opportunity to convict the accused. . . ." Id., 270 Pa.Super. at 379, 411 A.2d at 769.

Here, we hold that because the prosecutor's conduct did not in this instance constitute intentional or bad faith overreaching, reprosecution is not barred here.

Affirmed.

basis in the record to support the argument that it was an excited utterance: The arresting officer stated that when he apprehended Mills, Mills "[i]mmediately was taken back . . . He was in shock." Nevertheless, we agree with the reasoning of the trial court that the statement does not fit within the rationale of the "excited utterance" exception, "[s]ince that rationale lies in the special reliability" of such an utterance and "[t]he self-serving nature of Mills' statement destroys any indicia of reliability."

11. We wish to note that, in finding that prosecutor's remarks here to fall short of "overreaching," we are not condoning the type of error made here, especially with regard to the violation of *Bruton v. United States*, supra. As our Supreme Court stated in *Commonwealth v. Bolden*, supra:

Prosecutors are public officials entrusted with substantial and sensitive responsibilities. They are required to act in the public interest, which includes protecting the rights of the accused. Society rightfully expects that they maintain professional competence in the exercise of their functions. Id., 472 Pa. at 641, 373 A.2d at 109.