J-A20042-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DAJUAN SAUNDERS, | : | |
| | : | |
| Appellant | : | No. 3255 EDA 2013 |

Appeal from the Order entered on October 22, 2013
in the Court of Common Pleas of Monroe County,
Domestic Relations Division, No. CP-45-CR-0000851-2013

BEFORE:  FORD ELLIOTT, P.J.E., MUNDY and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:              **FILED AUGUST 27, 2014**

Dajuan Saunders ("Saunders") appeals from the Order denying his

Supplemental Motion for Relief on Grounds of Double Jeopardy.  We affirm.

The trial court set forth the relevant factual and procedural history as

follows:

> On March 18, 2013, Janet Chanel Mosley (hereinafter
> "Victim")[,] filed for a Temporary [Protection From Abuse[1] order
> ("PFA Order")] as a result of a physical altercation with
> [Saunders].  On March 21, 2013, Victim filed an indirect criminal
> contempt [Complaint].  This initial contempt [Complaint] was
> based on [Saunders] repeated phone calls to Victim, as well as
> threats communicated to Victim.
>
> On March 27, 2013, Corporal Douglas Smith ["Corporal
> Smith"] of the Pocono Township Police Department responded to
> the residence of Victim after the Monroe County Control Center
> advised that they had received a 911 hang-up call and that when
> contact was made, they could hear what sounded like a physical
> altercation.  The Control Center eventually made contact with a

---

[1] **See** 23 Pa.C.S.A. § 6107(b).

child at Victim's residence, who advised that his mother and father were fighting and that his mother was injured. Upon arrival at Victim's home, Corporal Smith observed the victim on the stairwell leading to the upstairs of the home and noticed that Victim's face was covered in blood, that she had an open wound on the outside of her nose, which was swollen and bleeding, that she had swelling on the left side of her face, that she was holding a large clump of hair, and that she was visibly upset and in a great deal of pain. Upon entering the residence, Corporal Smith saw blood all over the floor and a hole in the sheet rock at the bottom of the stairwell.

Victim advised Corporal Smith that she was in her home cooking dinner and caring for her children when [Saunders], who is the father of her five (5) children, gained entry into the residence. Victim told Corporal Smith that the residence was locked when [Saunders] gained entry. Additionally, Victim said that [Saunders] did not live there, that he did not have a key to the residence and that on the date of the incident, [Saunders] was not invited into Victim's home. While [Saunders] was inside Victim's residence, an argument ensued in the upstairs portion of the residence.

After the argument began, [Saunders] physically attacked Victim and proceeded to drag her down the first set of stairs. [Saunders] then threw Victim down the second set of stairs, all while kicking, punching and beating Victim. [Saunders] repeatedly punched Victim in the face and threw her into the wall, causing the hole in the sheet rock. While [Saunders] was attacking Victim, he called her names and threatened to kill her. Corporal Smith placed [Saunders] into custody and while doing so, noticed that [Saunders's] knuckles were bleeding. Victim and [Saunders's] oldest child, J.S., saw [Saunders] throw Victim down the stairs.

On April 2, 2013, Victim filed a second indirect criminal contempt [C]omplaint. This [C]omplaint was based, in part, on telephone calls made by [Saunders] to Victim while [Saunders] was incarcerated for the March 27th assault. On April 22, 2013, a PFA contempt hearing was held [by the trial court]. After hearing, [Saunders] was found in contempt based on Victim's April 2, 2013 contempt filing and was sentenced to six (6) months [of] incarceration[,] to be served in the Monroe County

Correctional Facility and a fine in the amount of $300.00, plus court costs.[2]

* * *

On May 7, 2013, the Commonwealth filed a Criminal Information, charging [Saunders] with the following crimes: one (1) count of Aggravated Assault, one (1) count of Burglary, one (1) count of Criminal Trespass, one (1) count of Terroristic Threats with Intent to Terrorize Another, one (1) count of Stalking, one (1) count of Recklessly Endangering Another Person and two (2) counts of Simple Assault.[3]

On June 13, 2013, [Saunders] filed a Motion for *Habeas Corpus* Relief. In his Motion, [Saunders] argue[d] that the evidence produced at the preliminary hearing was insufficient to sustain the charge of Aggravated Assault, and therefore, the Commonwealth ha[d] failed to establish a *prima facie* case. On August 1, 2013, [Saunders] filed a Supplemental Motion for Relief on Grounds of Double Jeopardy. In his Supplemental Motion, [Saunders] assert[ed] that he was previously found guilty of indirect criminal contempt based on a PFA [] violation and was sentenced to six (6) months [of] incarceration in the Monroe County Correctional Facility, as well as a monetary fine. [Saunders] argue[d] that as a result of this conviction, any further prosecution on the charges in the case *sub judice* should be barred based on the double jeopardy provisions of the state and federal constitutions, as well as the doctrines of *res judicata* and collateral estoppel. On August 2, 2013, a hearing was held

---

[2] The record reflects that Saunders's parole officer notified him of the PFA Order on March 19, 2013, and ordered him to have no contact with Victim. **See** N.T., 4/22/13, at 20-21. Thereafter, a question arose as to whether Saunders had been served with a copy of the PFA Order. **Id**. at 26. Accordingly, a copy of the PFA Order was hand-delivered to Saunders on March 28, 2013. **Id**. The trial court dismissed the first indirect criminal contempt Complaint based on its determination that Saunders had not been served with the PFA Order at the time of the violations alleged therein, and that he was not actually served with the PFA Order until March 28, 2013. **Id**. at 30-31.

[3] **See** Pa.C.S.A. §§ 2702(a)(1), 3502(a)(1), 3503(a)(1)(i), 2706(a)(1), 2709.1(a)(1), 2705, 2701(a)(1), (3).

to address both of [Saunders's] [M]otions. On September 4, 2013, [Saunders] filed his brief in support of his Omnibus Pretrial Motions.

Trial Court Opinion, 10/22/13, at 1-4 (footnotes omitted, footnotes added, italics supplied).

On October 22, 2013, the trial court denied Saunders's Motion for *Habeas Corpus* Relief and his Supplemental Motion for Relief on Grounds of Double Jeopardy. On November 20, 2013, Saunders filed a Notice of Appeal.[4] Thereafter, he filed a court-ordered Pa.R.A.P. 1925(b) Concise Statement of Matters Complained of on Appeal.

On appeal, Saunders raises the following issues for our review:

1. Whether double jeopardy principles require dismissal of the pending criminal charges because those offenses were previously prosecuted in the PFA criminal contem[pt] proceedings?

2. Whether under principles of *res judicata* and collateral estoppel, the pending burglary and criminal trespass charges should be dismissed as the service of notice barring [Saunders] from entering upon the premises pursuant to the PFA Order was litigated and found in favor of [Saunders] at the prior hearing?

Brief for Appellant at 4 (capitalization omitted, italics supplied).

In his first claim, Saunders contends that he cannot be prosecuted in this proceeding for any offense that he was prosecuted for in the criminal contempt proceeding. *Id*. at 8. Saunders asserts that the record in the

---

[4] A defendant may appeal an order denying his pretrial motion for relief under the double jeopardy clause. **See Commonwealth v. Starks**, 416 A.2d 498, 499 n.1 (Pa. 1980).

- 4 -

contempt proceeding did not clearly indicate the offenses at issue, and that the offenses at issue in that proceeding are not necessarily the same offenses for which he was found guilty of criminal contempt. ***Id***. at 9. Saunders claims that the trial court erroneously "concluded that the only offense[s] at issue in the contempt proceeding were the offenses for which [Saunders] was found in contempt" and that double jeopardy does not attach because the offenses for which he was convicted differ from the present criminal charges. ***Id***. at 10. Saunders asserts that the record is clear that he was tried in the contempt proceedings for the same offenses at issue in the present action. ***Id***. Saunders claims that, because he was already placed in jeopardy for those offenses at the contempt prosecution, he cannot be prosecuted for them again in this proceeding. ***Id***. at 12.

The question of whether a defendant's constitutional right against double jeopardy was infringed is a question of law. ***See Commonwealth v. Kuykendall***, 2 A.3d 559, 563 (Pa. Super. 2010). Hence, our scope of review is plenary, and our standard of review is *de novo.* ***Id.***

In determining whether a prosecution is barred by double jeopardy, a majority of the United States Supreme Court has adopted the "same elements" test set forth in ***Blockburger v. United States***, 284 U.S. 299 (1932). ***See Commonwealth v. Yerby***, 679 A.2d 217, 219 (Pa. 1996).

> Under this test, if each offense requires proof of an element that the other does not, the offenses are separate and double jeopardy does not apply. If, however, the offenses have identical elements, or if one offense is a lesser included offense

of another, the subsequent prosecution is barred. Stated another way, unless each of the two offenses for which the defendant is punished or tried contains an element not contained in the other, they are the same offenses and successive prosecution is barred.

*Id*. at 219 (citing **Blockburger**, 284 U.S. at 304) (internal citation omitted).

However, the United States Supreme Court has been unable to garner a majority vote as to the precise application of the same-elements test. **See Yerby**, 679 A.2d at 219. Accordingly, the Court in **Yerby** held that, in the context of a criminal contempt violation followed by criminal charges based on the same events giving rise to the contempt violation,

the more sound approach, and the one that adheres most to the concerns behind the protection against successive prosecutions, is one that looks to the specific contempt order and the elements of the violated condition(s) of that order. In other words, we must look to the specific offenses at issue in the contempt proceeding and compare the elements of those offenses with the elements of the subsequently charged criminal offenses. If they are the same, or if one is a lesser included offense of the other, double jeopardy attaches and the subsequent prosecution is barred. The focus, then, is on the offense(s) for which the defendant was actually held in contempt.

*Id*. at 221.

Application of the **Yerby** test requires that we review the contempt proceeding, which was premised on both the March 21, 2013 and April 2, 2013 indirect criminal contempt Complaints. Notably, the trial court determined that, despite being advised of the PFA Order by his parole officer on March 19, 2013, Saunders was not served with a copy of the PFA Order until March 28, 2013. **See** N.T., 4/22/13, at 30-31. For this reason, the

trial court concluded that Saunders could not be held in contempt of the PFA Order for any of his actions *prior* to his receipt of the PFA Order on March 28, 2013. *Id*. at 31-32. Accordingly, the trial court found Saunders in contempt *based solely on the phone calls he made to Victim from jail* between March 28, 2013 and April 2, 2103, when the second indirect criminal Complaint was filed. *Id*. at 32-33.

Here, each of the criminal charges pending against Saunders arose from the incidents that occurred on March 27, 2013, prior to service of the PFA Order upon Saunders. Because Saunders's contempt conviction was not based on any of the events of March 27, 2013, double jeopardy is not implicated. Thus, Saunders's first claim lacks merit.

In his second claim, Saunders contends that the collateral estoppel principles of the double jeopardy clause prohibit the prosecution of the burglary and criminal trespass charges. Brief for Appellant at 12. Saunders asserts that an ultimate issue in a burglary or criminal trespass prosecution is whether the defendant was "licensed or privileged to enter" the building. *Id*. at 13 (citing 18 Pa.C.S.A. §§ 3502, 3505). Saunders further contends "[t]hat ultimate issue was determined in [his] favor in the contempt proceeding, and the prosecution can now not litigate that issue again in the present criminal case." Brief for Appellant at 13. Saunders claims that the burglary and criminal trespass charges must be dismissed because the prosecution cannot establish that he had received notice that he was not

licensed or privileged to be on Victim's premises (*i.e.*, via his receipt of the PFA Order) prior to the date when those offense allegedly occurred. **Id**. at 14.

Saunders failed to sufficiently raise this issue in his Pa.R.A.P. 1925(b) Concise Statement of Matters Complained of on Appeal. As such, this issue is waived. **See Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) (stating that, if an appellant is directed to file a concise statement of matters to be raised on appeal pursuant to Pa.R.A.P. 1925(b), any issues not raised in that statement are waived).[5]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/27/2014

---

[5] Even if we were to address Saunders's second claim, we would have determined that it lacks merit. Saunders's argument erroneously assumes that his receipt of the PFA Order is the *only* method by which the Commonwealth can establish that he was not "privileged or licensed" to enter Victim's residence on March 27, 2013. This issue was not determined by the trial court at the contempt hearing, and remains to be determined by the trier of fact.