**[J-53-2021] [OAJC: Baer, C.J.]**

# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 6 EAP 2021 |
| | : | |
| Appellee | : | Appeal from the Order of Superior |
| | : | Court entered on July 29, 2020 at |
| | : | No. 3429 EDA 2018, affirming the |
| v. | : | Order entered on September 11, |
| | : | 2018 in the Court of Common Pleas, |
| | : | Philadelphia County, Criminal |
| DERRICK EDWARDS, | : | Division at Nos. CP-51-CR-0002611- |
| | : | 2013, CP-51-CR-0002614-2013, CP- |
| Appellant | : | 51-CR-0002617-2013, CP-51-CR- |
| | : | 0002815-2013, CP-51-CR-0002820- |
| | : | 2013, CP-51-CR-0002853-2013, CP- |
| | : | 51-CR-0002862-2013 and CP-51- |
| | : | CR-0002864-2013 |
| | : | |
| | : | ARGUED: December 7, 2021 |

## CONCURRING AND DISSENTING OPINION

**JUSTICE DONOHUE**                                          **DECIDED: April 12, 2022**

The Opinion Announcing the Judgment of the Court ("OAJC") recognizes that a prosecutor striking a juror in violation of *Batson v. Kentucky,* 476 U.S. 79 (1986) (holding that striking even one potential juror for racial reasons violates the Equal Protection Clause), definitionally involves "prosecutorial misconduct that violates the defendant's individual right to equal protection because it denies the safeguards that a trial by jury is intended to secure." OAJC at 30. We granted allowance of appeal to address whether that intentional racial discrimination justifies barring retrial pursuant to

the Pennsylvania Constitution's Double Jeopardy Clause.[1]  I concur with the Court's important conclusion that Pennsylvania's Double Jeopardy Clause can bar retrial for *Batson* violations.  I respectfully dissent because I find no basis to treat some *Batson* violations as more excusable than others.  Every *Batson* violation as an intentional act of racial discrimination[2] which has no place in our justice system.  I would hold that discharge is always required when a *Batson* violation occurs.

## I.

*Batson* is rooted in a case decided 142 years ago, *Strauder v. West Virginia*, 100 U.S. 303 (1879), which "explained that the central concern of the recently ratified Fourteenth Amendment was to put an end to governmental discrimination on account of race."  *Batson*, 476 U.S. at 85 (citing *Strauder*, 100 U.S. at 306-07).  Neither the Nation's history of racial discrimination nor the efforts to reverse it is amenable to a tidy summary.  It suffices to say that the lofty aim of *Strauder* was not self-executing and courts had to maintain vigilance.  *Batson* itself proves the point as that case overruled parts of *Swain v. Alabama*, 380 U.S. 202, 219 (1965).  In *Swain*, the defendant argued that state prosecutors intentionally excluded black jurors.  The evidence established that an average of six to seven black men were in the pool of potential jurors in that county,

---

[1]  "No person shall, for the same offense, be twice put in jeopardy of life or limb[.]" PA. CONST. art. I, § 10.

[2]  "Equal justice under law requires a criminal trial free of racial discrimination in the jury selection process." *Flowers v. Mississippi*, 139 S. Ct. 2228, 2242 (2019).  Thus, its protections extend to members of any race.  "A defendant of any race may raise a *Batson* claim, and a defendant may raise a *Batson* claim even if the defendant and the excluded juror are of different races." *Id.* at 2243.  *See also Powers v. Ohio*, 499 U.S. 400 (1991) (holding that a white defendant successfully established *Batson* violation when prosecutors struck African American jurors based on race).

but none served as an actual juror since about 1950. In Swain's case, eight black men were potential jurors but two were excused and six struck by the prosecutor. *Id.* at 205. Swain alleged that (1) the use of peremptory challenges was unconstitutional and (2) that the consistent and systematic exclusion of black jurors was unconstitutional. Regarding the systematic exclusion of black jurors, the Court decided that even if Swain established a prima facie case, "it is readily apparent that the record in this case is not sufficient to demonstrate that the rule has been violated by the peremptory system as it operates in Talladega County." *Id.* at 224. *Swain* therefore recognized that the Equal Protection Clause would be violated if a prosecutor used a peremptory strike for a racial reason but essentially made it impossible for a defendant to prove it.

*Batson* entrenched *Swain*'s Equal Protection Clause holding while overruling its proof requirements. The cases applying *Swain* "placed on defendants a crippling burden of proof," which "largely immun[ized]" peremptory challenges from constitutional scrutiny. *Batson*, 476 U.S. at 92. The inability to prove a constitutional violation was so pervasive that Justice White, who authored *Swain*, filed a concurring opinion agreeing that the proof requirements of *Swain* should be overruled. The *Swain* decision "should have warned prosecutors that using peremptories to exclude blacks on the assumption that no black juror could fairly judge a black defendant would violate the Equal Protection Clause," but the "practice of peremptorily eliminating blacks from petit juries in cases with black defendants remains widespread, so much so that I agree that an opportunity to inquire should be afforded when this occurs." *Id.* at 101 (White, J., concurring). The *Batson* Court thus allowed defendants to make individual challenges to peremptory strikes.

## II.

In the case before us, Derrick Edwards established a *Batson* violation and received a new trial. He now seeks discharge. To resolve this appeal, a critical question involves how the Equal Protection Clause violation interacts with the Double Jeopardy Clause contained in our charter. *Batson*, like the cases before it, was explicitly grounded in the Fourteenth Amendment and its Equal Protection Clause, not the Sixth Amendment right to a fair trial. *See, e.g., Batson*, 476 U.S. at 84 n.4 ("We agree with the State that resolution of petitioner's claim properly turns on application of equal protection principles and express no view on the merits of any of petitioner's Sixth Amendment arguments."); *id.* at 93 ("As in any equal protection case, the burden is, of course, on the defendant who alleges discriminatory selection of the venire to prove the existence of purposeful discrimination.") (quotation marks and citation omitted); *id.* at 102 ("The Court's opinion cogently explains the pernicious nature of the racially discriminatory use of peremptory challenges, and the repugnancy of such discrimination to the Equal Protection Clause.") (Marshall, J., concurring).

It seems clear that the United States Constitution does not compel discharge upon a finding of a *Batson* violation. The closing paragraph of *Batson* stated, "If the trial court decides that the facts establish, prima facie, purposeful discrimination and the prosecutor does not come forward with a neutral explanation for his action, our precedents require that petitioner's conviction be reversed." *Batson*, 476 U.S. at 100. This certainly goes far to explain why the parties do not cite a case in which any court has barred retrial for a *Batson* violation. *See* Commonwealth's Brief at 16 ("Our

research has uncovered no opinion that has discharged a defendant as the remedy for a *Batson* violation, nor do defendant and his amici cite any.").

But this case does not ask us what the United States Constitution requires. Instead, Edwards relies on a line of cases interpreting the Pennsylvania Constitution. Our precedents diverge from the United States Supreme Court regarding what types of prosecutorial acts warrant discharge instead of retrial. Per *Oregon v. Kennedy*, 456 U.S. 667 (1982), "[p]rosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion … does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." *Id.* at 675-76. It is "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial" that a defendant is permitted to raise the double jeopardy bar. *Id.* at 676.

This Court departed from *Kennedy* in *Commonwealth v. Smith*, 615 A.2d 321 (Pa. 1992), wherein we barred retrial based on the prosecutor's intentional withholding of exculpatory evidence. The *Smith* Court expressed uncertainty as to whether the *Kennedy* Court would bar retrial based on federal law. *Id.* at 325. Instead, the *Smith* Court grounded its holding in the Pennsylvania Constitution.

> We now hold that the double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial. Because the prosecutor's conduct in this case was intended to prejudice the defendant and thereby deny him a fair trial, appellant must be discharged on the grounds that his double jeopardy rights, as guaranteed by the Pennsylvania Constitution, would be violated by conducting a second trial.

*Id.*

As signaled by the *Smith* Court's declaration that "our view is that the prosecutorial misconduct in this case implicates the double jeopardy clause of the Pennsylvania Constitution," *id.*, determining whether a prosecutor "overreached" typically involves judgment calls. Our decision in *Commonwealth v. Martorano*, 741 A.2d 1221 (Pa. 1999), illustrates that point. Applying *Smith*, this Court granted discharge based on the aggregate effect of the prosecutor's misconduct, which included: consistent references to evidence that the trial court ruled was inadmissible, defying other court rulings, and insisting fingerprint evidence linked the defendant to the crime despite the fact no such evidence existed. Justice Saylor dissented, arguing that the *Smith* rule "lacks sufficient definition to serve as a workable standard," and predicted "that reviewing courts will have differing interpretations as to whether application of the bar is warranted, thus resulting in uneven application." *Id.* at 1224, 1226 (Saylor, J., dissenting). Indeed, the *Kennedy* Court acknowledged that the high Court's "earlier opinions" had "suggest[ed] a broader rule," and criticized those earlier formulations as "broad and somewhat amorphous[.]" *Kennedy*, 456 U.S. at 676-78.

Most recently, in *Commonwealth v. Johnson*, 231 A.3d 807, 819 (Pa. 2020), we concluded that under the Pennsylvania Constitution "prosecutorial overreaching sufficient to invoke double jeopardy protections includes misconduct which not only deprives the defendant of his right to a fair trial, but is undertaken recklessly, that is, with a conscious disregard for a substantial risk that such will be the result." *Id.* at 826. This supplements *Smith*'s holding "relating to tactics specifically designed to provoke a mistrial or deny the defendant a fair trial." *Id.* Simultaneously, those decisions "clarified

that not all intentional misconduct is sufficiently egregious to be classified as overreaching" to bar retrial. *Id.* at 822. The remedy largely remains a judgment call.

## III.

On the important point of whether "overreaching" encompasses *Batson* violations, I concur with the OAJC. We explained in *Johnson* that *Martorano* "clarifi[ed] that *Smith*'s holding was not limited to its facts, but encompassed any bad-faith misconduct intended to deprive the defendant of a fair trial." *Johnson*, 231 A.3d at 824 n.11. In this regard, "the holding of *Smith* appears to be deliberately nonspecific, allowing for any number of scenarios in which prosecutorial overreaching is designed to harass the defendant through successive prosecutions or otherwise deprive him of his constitutional rights." *Martorano*, 741 A.2d at 1223. A *Batson* violation, bad faith conduct intended to deprive the defendant of a fair trial, surely qualifies as prosecutorial overreaching that deprives the defendant of his constitutional rights. On this point, I agree with the dissent in *Commonwealth. v. Basemore*, 875 A.2d 350 (Pa. Super. 2005) ("*Basemore II*"), which argued for the outcome advanced by Edwards today:

> *Batson* violations impact upon the "fundamental fairness of a trial." *Basemore, supra,* 744 A.2d at 734. Racial discrimination in jury selection is more than trial error; it results in a structural defect, *Tankleff v. Senkowski,* 135 F.3d 235, 248 (2nd Cir.1998), affecting the framework within which the trial proceeds, depriving a defendant of the "basic protections" that a trial is designed to protect, and undermining the reliability of the verdict. *Basemore,* 744 A.2d at 734, referring to *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). Active discrimination by litigants on the basis of minority stereotypes during jury selection "invites cynicism respecting the jury's neutrality and its obligation to adhere to the law." *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127, 114 S.Ct. 1419, 1427, 128 L.Ed.2d 89 (1994) citing *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).

*Id.* at 358 (Joyce, J., dissenting).

A *Batson* violation is an intentional act and represents a conscious act of racial discrimination. It is, by definition, a bad faith decision. And the entire point of exercising a peremptory strike in a racially discriminatory fashion is to remove a juror whom the prosecutor thinks will be an obstacle to a conviction. It is true that every peremptory strike by the prosecution is designed to tip the scales towards a conviction, but striking a juror on the basis of race in violation of *Batson* is, as a matter of law, not a tool in the toolbox for seeking an advantage or removing an obstacle.

Our decision in *Smith* approvingly quoted *Commonwealth v. Starks*, 416 A.2d 498, 500 (Pa. 1980), which explained that "overreaching is not an inevitable part of the trial process and cannot be condoned. It signals the breakdown of the integrity of the judicial proceeding, and represents the type of prosecutorial tactic which the double jeopardy clause was designed to protect against." Molding a jury based on race pollutes the entire proceeding, both from the perspective of the defendant as well as the unconstitutionally struck juror who suffers the indignity of racial discrimination. But it not only signals a breakdown of the specific trial. It also harms society. A jury must be chosen indifferently "to secure the defendant's right under the Fourteenth Amendment to 'protection of life and liberty against race or color prejudice.' " *Batson*, 476 U.S. at 87 (citation omitted). The *Powers v. Ohio* Court remarked that "[j]ury service preserves the democratic element of the law, as it guards the rights of the parties and ensures continued acceptance of the laws by all of the people." *Powers v. Ohio*, 499 U.S. at 407. A *Batson* violation, an intentional act of racial discrimination, is easily encompassed by *Smith* and its progeny.

In my view, where the OAJC fatally missteps is by concluding that only some *Batson* violations qualify as overreaching. Despite the conclusive finding that *Batson* was violated, the OAJC finds that Edwards "has not demonstrated prosecutorial overreaching, which signals that the judicial process has fundamentally broken down." OAJC at 33. Respectfully, I cannot agree with this notion. Any *Batson* violation causes a fundamental breakdown. The only way to say it does not is to decide that some unspecified level of racial discrimination is acceptable, when the only tolerable level is none at all.

The OAJC responds that this is an unfair characterization because "it suggests that every state and federal decision granting a new trial as a remedy for a *Batson* violation (as opposed to precluding retrial) affirmatively accepts some unspecified level of racial discrimination in jury selection." *Id*. at 31.[3] Respectfully, this response misapprehends our task. We are not choosing a remedy for **this** *Batson* violation. Instead, we are asked to decide whether the Pennsylvania Double Jeopardy Clause's enhanced protections extends to *Batson* violations, and then, if so, what the remedy should be. The fact that other courts have not recognized a Double Jeopardy Clause violation and thus have not required discharge for a violation of *Batson* is irrelevant for

---

[3] The courts to which the OAJC refers did not recognize a *Baston* violation as a subversion by the prosecutor of the protections afforded by the Double Jeopardy Clause and thus, retrial was the established remedy for the violation. Unlike the OAJC, those courts were not selectively applying alternative remedies for recognized *Batson* violations.

purposes of determining whether the Pennsylvania Constitution demands a different result.[4]

---

[4] Justice Mundy claims that a per se rule is not warranted because "the error itself" should determine the remedy, and additionally points out that "[i]n other instances of prosecutorial misconduct, the remedy is the same whether it is discovered during trial or post-conviction." Concurring Op. at 3 (Mundy, J.). For example, the Concurrence notes that evidentiary errors, whether identified by the trial court or on appeal, result in a new trial. However, trial errors are simply not comparable to a prosecutor committing a *Batson* violation. *See Burks v. United States*, 437 U.S. 1, 15 (1978) (explaining that "[v]arious rationales have been advanced to support the policy of allowing retrial to correct trial error"). Nor is the fact that discharge is unavailable "when the *Batson* violation was remedied pretrial," Concurring Op. at 3, a forceful point as jeopardy has yet to attach; there cannot be "double jeopardy" when the defendant was never in jeopardy. This attempt to manufacture an incongruity additionally fails because the defendant who is judged by a tainted panel has suffered a harm that the defendant who received a new jury panel has not. To the extent a per se rule encourages trial courts to be more vigilant in policing *Batson* claims, all the better. Moreover, the statistics cited by Justice Mundy highlighting the relatively few successful *Batson* challenges reported in Pennsylvania since that case was decided (*Id.* at 2 n.3) militate in favor of recognizing discharge for the violation of our Double Jeopardy Clause, not against it.

Additionally, the Concurrence's weighing *Batson* violations against society's interest in prosecuting crime avoids the question of whether a prosecutor's intentional racially discriminatory strike qualifies as "overreaching." Our *Johnson* opinion cogently explained when prosecutorial errors cross the line:

> [W]hereas prosecutorial errors are an "inevitable part of the trial process," prosecutorial overreaching is not. Just as important, overreaching signals that the judicial process has fundamentally broken down because it reflects that the prosecutor, as representative of an impartial sovereign, is seeking conviction at the expense of justice. As such … it is the very type of "tactic which the double jeopardy clause was designed to protect against."

*Commonwealth v. Johnson*, 231 A.3d 807, 824 (Pa. 2020) (citations omitted). The Concurrence's description of a *Batson* violation as "undoubtedly harmful," Concurring Op. at 3 n.3, is simply an alternative way of saying it cannot amount to "overreaching." Aligning *Batson* errors with other errors, like erroneous evidentiary rulings that do not warrant discharge, treats *Batson* violations as an inevitable part of our judicial system.

Once the OAJC determined that a *Batson* violation can violate the Double Jeopardy Clause warranting discharge, it logically follows that all *Batson* violations require discharge. Otherwise, we are requiring courts to engage in the unseemly task of deciding just how much discrimination is acceptable in the jury selection process as reflected by the belief that "[t]he nature of the *Batson* violation is relevant to our double jeopardy analysis concerning whether such a violation may constitute prosecutorial overreaching." OAJC at 21 n.17. The "nature of" every *Batson* violation is a racially discriminatory act and thus the OAJC must be saying that some of these acts are more acceptable than others. Thus, while the OAJC claims its decision "makes clear that distinct standards govern *Batson* claims and claims alleging violations of double jeopardy," *id.* at 31, that clarity exists only within that declaration. It is impossible for me to comprehend the notion that intentional racial discrimination by a prosecutor, a minister of justice, is ever anything but so reprehensible that it always qualifies as "overreaching." Whereas cases like *Smith* and *Martorano* quintessentially involve judgment calls, a finding of a *Batson* violation is, per se, overreaching and retrial must be barred.

Instead of accepting, as we must, the unappealed decision of the Superior Court and its finding of a *Batson* violation,[5] the OAJC attempts to avoid the seemingly inevitable conclusion that any *Batson* violation qualifies as overreaching by relitigating whether the prosecutor really committed a *Batson* violation. True, the OAJC acknowledges that the Superior Court's conclusion that Edwards established a *Batson*

---

[5] No petition for allowance of appeal was filed by the Commonwealth. *See* Docket, 436 EDA 2015.

violation constitutes the law of the case. However, its opinion then attempts to undermine the Superior Court's conclusion:

> Significantly, in connection with the morning panel of jurors, the prosecutor accepted six of the first eight African Americans on the panel, and exercised her peremptory challenges by striking two African Americans. Jury Strike List, 10/28/2014. Relating to the afternoon panel of jurors, the prosecutor struck five African Americans and one juror whose race was indicated as "Other." *Id.* Accordingly, the prosecutor utilized all eight peremptory challenges on individuals of a minority race, with seven of the eight strikes against African Americans.
>
> Notably, Appellant did not challenge all seven peremptory strikes exercised by the Commonwealth against African Americans during *voir dire* and did not contend that the seven strikes were racially driven. Thus, we should not view all seven strikes as though they were exercised in a racially discriminatory manner. Rather, Appellant challenged only four of the prosecutor's peremptory strikes of African Americans, and the trial court, the tribunal that observed the jury selection process firsthand, accepted as race neutral all the reasons the prosecutor offered for striking these jurors, and denied the *Batson* challenge, finding no evidence of purposeful discrimination.

OAJC at 32 (emphasis added).

This is an apologia for the prosecutor's use of peremptory challenges and suggests that the Superior Court may have reached the wrong result.[6] If the OAJC is

---

[6] To the extent that the OAJC suggests that the three other peremptory strikes were not discriminatory, the Superior Court had no need to address those other strikes. The only thing that the Superior Court found was that the prosecution offered race-neutral reasons for all four peremptory strikes at issue. Thus, the relitigation is additionally flawed because it does not address the possibility that the other three strikes were also racially discriminatory. In this regard, it is important to point out that the Superior Court pertinently noted the prosecutor's use of all peremptory challenges to strike black jurors, stating that "the probability of the Commonwealth striking such a disproportionate number of African–Americans by chance is extremely low." *Commonwealth v. Edwards*, 177 A.3d 963, 975 (Pa. Super. 2018).

indeed accepting the finding of a *Batson* violation as the law of this case then I cannot endorse the implicit notion that *Batson* violations are somehow less reprehensible if only one act of racial discrimination took place.[7]  Respectfully, the OAJC errs by concluding that *Batson* violations exist on a spectrum, with some resulting in prosecutorial overreaching and discharge while other violations do not.   "In the eyes of the Constitution, one racially discriminatory peremptory strike is one too many." *Flowers v. Mississippi*, 139 S. Ct. 2228, 2241 (2019).

## IV.

All *Batson* violations should result in discharge.  Each such violation represents an act of intentional racial discrimination that has no place in our judicial system.  We cannot make a judgment call that some racial discrimination is acceptable.  Just as Justice White agreed in *Batson* that the time had come to overrule portions of the *Swain* case that he penned, the time has come for this Court to declare that, under the Pennsylvania Constitution, a mere retrial is not enough.  *Batson* exists because *Swain* failed to stamp out racial discrimination in the jury selection process.  And thirty-five years later, we see that *Batson* violations still occur.  If discharge is warranted for *Batson* violations—and the OAJC agrees that it is—it is warranted in all *Batson* cases.  I cannot endorse the notion that the judicial system should decide, as a matter of law, just how much racial discrimination by a prosecutor is tolerable in jury selection on a case-by-case basis.  The only acceptable answer is none.  I would therefore adopt a rule where a defendant is tried by a jury tainted in composition by any *Batson* violation,

---

[7]  In a criminal trial where a unanimous verdict is required for conviction, the impact of any one juror has an obvious material effect.

Pennsylvania's Double Jeopardy Clause would be violated by retrial and thus the defendant must be discharged.

Justice Wecht joins this concurring and dissenting opinion.