**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Dawan WOOD, Appellant.**

Superior Court of Pennsylvania.

Argued March 19, 2002.

Filed July 2, 2002.

Christine H. Nooning, Public Defender, Pittsburgh, for appellant.

Kevin McCarthy, Assistant District Attorney, Pittsburgh, for Com.

Before: JOHNSON, BENDER and MONTEMURO *, JJ.

OPINION BY BENDER, J.:

¶ 1 Dawan Wood (Appellant) appeals from the order denying his motion for a dismissal of the charges against him based on double jeopardy grounds. Appellant claims that the Commonwealth is barred from retrying him because the prosecutor in his first trial engaged in misconduct intended to prejudice Appellant to the point of denying him a fair trial and intentionally goading Appellant into moving for a mistrial. For the reasons that follow, we remand for an evidentiary hearing on this issue.

¶ 2 This case arises from a purse snatching that occurred in the afternoon hours of November 7, 1998 near the corner of Penn Avenue and Park Street in the Borough of Wilkinsburg, Allegheny County. N.T. Trial, 9/27–28/99, at 28–30. The police ar-

* Retired Justice assigned to Superior Court.

rived on the scene to find the victim, Mrs. Cohen, disoriented and bleeding from a laceration to the head. *Id.* Mrs. Cohen continuously asked for her purse, which the officers could not locate. *Id.* at 31. There were several people gathered at the scene, but nobody witnessed the incident. *Id.* at 30. However, "after speaking to several of the citizens," the police "obtained a description of a gentleman that was standing next to Mrs. Cohen prior to the bus arriving at the bus stop where she was waiting for the bus." *Id.* at 32. The description was one of a "black male, approximately six foot one, green jacket, black hat and black pants with a medium build." *Id.* at 34. The police searched the area, but they did not locate anyone matching this description. *Id.* at 32. Paramedics arrived, and took Mrs. Cohen to Forbes Regional Hospital. Subsequently, she was transferred to various hospitals, and she died on December 15, 1998. *Id.* at 58.

¶ 3 The police interviewed several people while conducting the investigation, none of whom identified Appellant as the possible perpetrator, and two of whom identified other individuals as the possible perpetrator. The police investigated the identified individuals, but did not file charges against either one.

¶ 4 Approximately ten months after the crime was committed, Detective Knox of the Wilkinsburg Police Department interviewed Appellant. During the interview, Appellant waived his right to counsel and signed the following written statement:

Around November 5th in the afternoon at 2:30, while waiting on my pay, I decided to begin saving money for Christmas.[1] Having no money to start, I heard that it was easy [to] make mon-

ey by taking purses. I went to the bus stop on Penn Avenue and began talking to an elderly lady waiting on a bus. She was wearing a blue overcoat and a white scarf. After working up the nerve to take her purse, I pulled it out from under her arm and ran to the alley behind the 711. I then threw the white purse into a dumpster behind some apartment buildings.

N.T. Trial, 9/27–28/00, at 87–88.

¶ 5 Based on the foregoing, the police arrested Appellant and charged him with criminal homicide and robbery for the Mrs. Cohen incident. The matter proceeded to a jury trial before the Honorable Kathleen A. Durkin. Upon Appellant's motion, Judge Durkin granted a mistrial based upon the Commonwealth's failure to disclose inculpatory evidence. Trial Court Opinion, 7/31/01 (T.C.O.), at 1. The Commonwealth sought to retry Appellant, and he filed a motion to dismiss on double jeopardy grounds. The case again proceeded before Judge Durkin, and she denied the motion. Appellant then filed this appeal raising one question for our review:

1. Did the trial court err in denying Appellant's motion for dismissal based on double jeopardy grounds because it found that the Commonwealth did not act intentionally?

Brief for Appellant at 4.

¶ 6 Although Appellant has framed one question for our review, he advances two arguments in his brief. Both arguments support his claim that double jeopardy bars the Commonwealth from retrying him. Specifically, Appellant argues that the prosecutor engaged in misconduct designed: (1) to deprive Appellant of a fair trial; and (2) to goad Appellant into mov-

---

**1.** "Present for my mother" is handwritten above the word "Christmas." N.T. Trial 9/27–28/00, at 88.

ing for a mistrial. Brief for Appellant at 15, 25.

¶ 7 "An appeal grounded in double jeopardy raises a question of constitutional law. This court's scope of review in making a determination on a question of law is, as always, plenary." *Commonwealth v. Mattis*, 454 Pa.Super. 605, 686 A.2d 408, 410 (1996). Accordingly, we shall conduct a broad review of the arguments and record in this appeal. *Accord Universal Am–Can, Ltd. v. W.C.A.B.*, 563 Pa. 480, 762 A.2d 328, 331 n. 2 (2000) (stating that a plenary scope of review is a broad one). Our research has revealed no standard by which to review the trial court's findings of fact in a double jeopardy case, however, as in most appeals, we shall defer to the trial court's determinations on such matters. In this regard, we find the standard of review for analyzing weight of the evidence claims applicable to the case before us:

> Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record.

*Commonwealth v. Young*, 692 A.2d 1112, 1114–15 (Pa.Super.1997) (citations omitted). *See also Commonwealth v. Paquette*, 451 Pa. 250, 301 A.2d 837, 841 (1972) (stating: "On appellate review of a criminal conviction, we will not weigh the evidence and thereby substitute our judgment for that of the finder of fact. To do so would require an assessment of the credibility of the testimony and that is clearly not our function.").

¶ 8 In certain circumstances, prosecutorial misconduct may rise to a level of overreaching and result in a mistrial, in which case double jeopardy will bar retrial of the defendant. *See Commonwealth v. Smith*, 532 Pa. 177, 615 A.2d 321, 325 (1992). The rationale that supports the proscription embodied in the double jeopardy clause is that

> the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Commonwealth v. Starks*, 490 Pa. 336, 416 A.2d 498, 499 (1980) (quoting *Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)). "[A] criminal proceeding 'imposes heavy pressures and burdens psychological, physical, and financial on a person charged. The purpose of the Double Jeopardy Clause is to require that he be subject to the experience only once for the same offence." ' *Starks*, 416 A.2d at 500 (quoting *Breed v. Jones*, 421 U.S. 519, 530, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975)).

¶ 9 Whereas innocent prosecutorial error cannot always be avoided, "overreaching is not an inevitable part of the trial process and cannot be condoned. It signals the breakdown of the integrity of the judicial proceeding, and represents the type of prosecutorial tactic which the double jeopardy clause was designed to protect against." *Smith*, 615 A.2d at 324 (quoting *Starks*, 416 A.2d at 500). Under Pennsylvania law, there are two types of prosecutorial misconduct that trigger double jeopardy. First, the double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant "when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to

the point of the denial of a fair trial." *Smith*, 615 A.2d at 325. Second, retrial is also prohibited when the "prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial." *Id.*

¶ 10 Appellant advances his double jeopardy claim on both of the foregoing grounds. First, he argues that the Assistant District Attorney (ADA) who prosecuted this case at trial, Todd Goodwin, Esquire, committed misconduct by: (1) withholding exculpatory evidence in the form of witness identifications of other individuals as the possible perpetrator of the crime; (2) conducting clearly unconstitutional identification procedures of Appellant; and (3) not disclosing inculpatory evidence in the form of a witness identification of Appellant as the possible perpetrator of the crime until the witness took the stand and identified Appellant in open court before the jury. Appellant argues that this misconduct was intentionally undertaken and was so egregious as to deny him his right to a fair trial and, therefore, is a bar to a retrial on grounds of double jeopardy. Brief for Appellant at 15.

¶ 11 Second, Appellant argues that the unconstitutional identifications, followed by ADA Goodwin's failure to apprise defense counsel of the identifications, and the in-court identification of Appellant by the witness in the presence of the jury left defense counsel with no option but to move for a mistrial forthwith. Appellant claims that this conduct was intentionally undertaken to goad Appellant into moving for a mistrial and, therefore, is a second basis for barring his retrial on grounds of double jeopardy.

■ ¶ 12 While Appellant's double jeopardy claim facially appears to have argua-

ble merit, the record before us is inadequate for us to pass on the substantive merit of the claim. Accordingly, we conclude that a remand is necessary for an evidentiary hearing. We note that although one of the trial transcripts indicates that a hearing was held on January 5, 2001, what transpired was in fact oral argument on the motion to dismiss.[2] The record shows that on this date, the case was to proceed to jury selection when Judge Durkin determined that she must first rule upon the motion to dismiss. N.T., 1/5/01, at 4. Counsel then argued the motion without the introduction of any evidence in the form of testimony, documents, or otherwise. Furthermore, we also note that the Commonwealth submits that a remand to the trial court may be appropriate. Brief for Appellee at 18. What follows is our reasoning for declining to affirm the trial court's decision, which shall illustrate the necessity of an evidentiary hearing.

■ ¶ 13 Appellant first claims that ADA Goodwin intentionally withheld exculpatory evidence in the form of police reports. These reports were not introduced into evidence at trial or at the argument on the motion to dismiss that preceded what was to be the re-trial. However, the parties have filed a Stipulation to Supplement the Record on Appeal and Order of Court, dated 12/18/01, which includes these documents. They show that the police interviewed witnesses that identified individuals other than Appellant as the possible perpetrator of the crime in this case, either from a photo array or by name. The Commonwealth concedes that some of this evidence was not produced to Appellant, but that this occurred because this evidence was in the possession of the po-

---

**2.** Accordingly, we shall refer to this proceeding as an "argument" from this point forward

in the Opinion.

lice and was unknown to ADA Goodwin. Brief for Appellee at 17.

¶ 14 As the Commonwealth acknowledges, however, whether the evidence was in the prosecutor's possession or in the possession of the police is of no moment in determining whether the Commonwealth had an obligation to produce the evidence. *See Commonwealth v. Burke,* 566 Pa. 402, 781 A.2d 1136, 1142 (2001) (stating that a prosecutor's obligation to disclose "clearly extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution"). Therefore, the prosecution undoubtedly breached its obligation to disclose these documents, which contained important exculpatory evidence. Nonetheless, the Commonwealth argues that while ADA Goodwin's failure to turn over this evidence may have been a breach of his obligation under the Pennsylvania Rules of Criminal Procedure, *see* Pa.R.Crim.P. 573(B), the fact that he did not know about the evidence means that he could not have intentionally failed to disclose it. Brief for Appellee at 17. In so arguing, the Commonwealth relies on the statements Goodwin made at trial and at the argument on the motion to dismiss. *Id.* However, "it is well settled in the law that attorneys' statements or questions at trial are not evidence." *Commonwealth v. LaCava,* 542 Pa. 160, 666 A.2d 221, 231 (Pa.1995). Interestingly, although this issue was a point of serious contention during the argument on the motion to dismiss and was included in Appellant's Pa.R.A.P.1925(b) statement, the trial court opinion contains no discussion or finding regarding the issue.

¶ 15 However, the trial court did address the prosecutor's conduct as it related to the events leading up to the identification of Appellant in court. T.C.O. at 2. The in-court identification was preceded by several occasions during which the po-

lice and ADA Goodwin questioned the witness, Barbara Hoffee, in an effort to have her identify the possible perpetrator. Some of these meetings occurred at the Wilkinsburg police station in the weeks following the commission of the crime. N.T., 9/27–28/00, at 123–27. Eventually, the police presented a photo array that included a picture of Appellant, and Hoffee again failed to make a positive identification. *Id.* at 127, 151, 781 A.2d 1136.

¶ 16 On the day of trial, Hoffee again met with Detective Bender and ADA Goodwin. There is conflicting testimony as to what occurred during this meeting. Hoffee testified that Detective Bender placed two photographs of Appellant on his desk and asked Hoffee, "Does this look familiar[?]" *Id.* at 134, 781 A.2d 1136. Hoffee again failed to identify Appellant. *Id.* Detective Bender testified that he "was unaware of anyone else being around" and that Hoffee was "mistaken" because it was "a direct question and answer from myself to Mr. Goodwin." *Id.* at 139–41, 781 A.2d 1136.

¶ 17 Later that day, in the hallway outside the courtroom, Goodwin asked Hoffee, "Would you be able to identify him if you saw him in the hall?" *Id.* at 119, 781 A.2d 1136. Hoffee responded equivocally saying that she did not know if she would be able to identify him. *Id.* However, upon seeing Appellant being escorted into court by the Sheriff's deputy, Hoffee stated, "that's him." *Id.* at 132, 135–36, 781 A.2d 1136. It is not disputed that Goodwin never relayed this information to defense counsel.

¶ 18 The proceedings then commenced for the day, and Hoffee was the second witness to testify. *Id.* at 97, 100, 781 A.2d 1136. During Goodwin's direct examination of Hoffee, Goodwin questioned Hoffee about a man she saw departing the scene

of the crime. *Id.* at 100–13, 781 A.2d 1136. He then asked her:

> Let me ask you this. The person that you talked about today that you discussed, this person that walked up Summit Street and that you saw at the bus stop, do you see the person here in court today?

*Id.* at 113–14, 781 A.2d 1136. Hoffee then identified Appellant. *Id.* at 114, 781 A.2d 1136. Defense counsel then requested a sidebar at which he moved for a mistrial. *Id.* at 116, 781 A.2d 1136.

¶ 19 Judge Durkin found that Hoffee's identification violated Appellant's right to due process because it was the result of unduly suggestive procedures and occurred without the presence of counsel. Accordingly, Judge Durkin granted the mistrial and granted Appellant's motion to suppress Hoffee's identification if Appellant is retried. N.T., 1/5/01 at 38. However, Appellant argues that ADA Goodwin intentionally conducted these unconstitutional identification procedures in an effort to prejudice Appellant and thereby deprive him of a fair trial. This argument is persuasive, as an appellant's right to counsel for a corporeal identification is well settled. *See Moore v. Illinois,* 434 U.S. 220, 225, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); *U.S. v. Wade,* 388 U.S. 218, 236–37, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Commonwealth v. Taylor,* 472 Pa. 1, 370 A.2d 1197, 1206 (1977); *Commonwealth v. Richman,* 458 Pa. 167, 320 A.2d 351, 352 (1974); *Commonwealth v. Melson,* 383 Pa.Super. 139, 556 A.2d 836, 840 (1989). Furthermore, an identification violates due process if "the facts demonstrate that the identification procedure was so infected by suggestiveness as to give rise to a substantial likelihood of irreparable misidentification." *Commonwealth v. Pierce,* 567 Pa. 186, 786 A.2d 203, 217 (2001) (quotation marks and citations omitted). *See also Common-*

*wealth v. Robinson,* 781 A.2d 152, 161 (Pa.Super.2001); *Commonwealth v. Bruce,* 717 A.2d 1033, 1037 (Pa.Super.1998). Faced with this black letter law regarding procedures for the identification of criminal defendants, it is difficult to comprehend how an ADA prosecuting a murder case in Allegheny County could not have known that he was prejudicing Appellant's right to a fair trial when the aforementioned identification procedures were conducted.

¶ 20 The court concluded that while these identifications violated Appellant's due process rights, ADA Goodwin's actions did not rise to the level of misconduct that would bar Appellant's retrial on double jeopardy grounds. Again, the trial court did not address the issue of whether the unconstitutional identification procedures were intentionally undertaken to prejudice Appellant and thereby deprive him of a fair trial. However, the court did find that the identification testimony from Hoffee "was not intentionally elicited by the Commonwealth" and that "the testimony came as a surprise to both the Commonwealth and the defense." T.C.O. at 2. Consequently, the court concluded that "the Commonwealth did not intentionally attempt to goad the defendant into requesting a mistrial . . . ." *Id.*

¶ 21 We conclude that the court's finding as to ADA Goodwin's intent has no support in the record. While Hoffee's testimony was certainly a surprise to the defense, Goodwin should have known exactly how Hoffee would respond when he asked her if she could identify the person she saw leaving the crime scene. Hoffee had just identified Appellant in Goodwin's presence as Appellant was being escorted into court, and in response to Goodwin's question as to whether Hoffee would recognize Appellant "if she saw him in the hall." Moreover, we can discern no other meaning

from the express terms of the question to Hoffee during her testimony other than an explicit elicitation of an identification of Appellant. Therefore, the record is devoid of any evidence that could support the finding that Hoffee's in-court identification of Appellant was a surprise or unintentionally elicited.

¶ 22 The question that remains is whether these actions were undertaken to deprive Appellant of a fair trial or to goad Appellant into moving for a mistrial. Certainly, Goodwin should have foreseen the inevitable motion for a mistrial that followed Hoffee's testimony. Ultimately, Appellant was identified in the presence of the jury by unconstitutional means and without prior notice to counsel. By not informing defense counsel, and then eliciting the identification testimony, Goodwin should have known that he was letting the proverbial cat out of the bag. Had he informed defense counsel, then a motion for suppression would likely have followed and Judge Durkin, based on her ruling regarding the identification, would have granted the motion. But once Hoffee rendered the inculpatory identification, the irreparable damage had been done.

¶ 23 Notwithstanding the foregoing, we are loath to permit Appellant to walk away from a murder charge without a full trial on the record before us. *See Commonwealth v. McElligott,* 495 Pa. 75, 432 A.2d 587, 590 (1981) (stating that "[t]he remedy of discharge without a fair and complete fact-finding procedure is extreme and will not be invoked absent *deliberate bad faith prosecutorial misconduct* "). What is most conspicuously absent from the record in this case, is any evidence that could justify ADA Goodwin's actions and provide a reasonable explanation for his chosen course. Accordingly, we remand this case for an evidentiary hearing limited to the issues of whether Goodwin's actions consti-

tuted misconduct intended to prejudice Appellant to the point of denying him a fair trial or intentionally goading Appellant into moving for a mistrial. Following this hearing, we direct the trial court to make a determination limited to the foregoing issues.

¶ 24 Order REVERSED. Case REMANDED for an evidentiary hearing consistent with this Opinion. Jurisdiction RELINQUISHED.