J-S28008-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOVON DATON JONES, | |
| Appellant | No. 1315 MDA 2014 |

Appeal from the PCRA Order July 14, 2014
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0005974-2011

BEFORE:  BOWES, ALLEN, and LAZARUS, JJ.

MEMORANDUM BY BOWES, J.:                              **FILED JUNE 05, 2015**

Jovon Daton Jones appeals from the order entered July 14, 2014, by the court denying his petition filed pursuant to the Post-Conviction Relief Act ("PCRA").  We affirm.

The underlying facts of this matter involve the killing of Alesia Martin, whose body was discovered in her home on May 16, 2011.  Appellant lived in a row home next door to the victim.  Family members became concerned when they were unable to contact Ms. Martin. One of her family members, Bryce Bennett, entered into her home by going through a crawl space between Appellant's attic and the victim's residence.  Appellant allowed Mr. Bennett to use the crawl space but did not accompany him.  Mr. Bennett found the victim in a state of undress in her bedroom with blood on the walls.  Her bed had been stripped of the bedding and a large bloodstain was

on the bed. Mr. Bennett opened the front door and telephoned 911 with Appellant's cell phone but was too distraught to speak.

Appellant volunteered for an interview with police on May 18, 2011. Appellant initially indicated that, after Mr. Bennett opened the door to the victim's home, Appellant went upstairs into the victim's room. According to him, the 911 dispatcher asked him to touch the body and see if it was cold. However, two other family members of the victim who were at the house when the body was discovered contacted police after seeing Appellant provide media outlets with graphic descriptions of the scene. These family members insisted that Appellant had not entered the victim's bedroom. Mr. Bennett also confirmed that Appellant had not gone into the bedroom, as did several other witnesses who had been present.

Based on this information, police secured a search warrant for Appellant's home, and requested Appellant to come in for a second interview. Appellant did volunteer to be interviewed and he was given *Miranda* warnings. The interview was both audio and video recorded. Police interviewed Appellant from 10:51 p.m. until 5:31 a.m., with various breaks in between. Ultimately, Appellant admitted to stealing the victim's cell phone and implicated himself in the killing. Police then arrested Appellant. After a preliminary hearing, Appellant's charges were amended to

include first-degree murder, third-degree murder, burglary, theft by unlawful taking, abuse of corpse, tampering with evidence, and unsworn falsification.

Appellant litigated a suppression motion and proceeded to trial. The Commonwealth and defense counsel agreed that portions of Appellant's May 19-20 video interview would be redacted. Defense counsel notified the prosecution via email of the portions of the video he believed should be redacted. The parties agreed that a portion of the video that referenced other burglary allegations would not be played for the jury. However, during the trial, the Commonwealth played that section before stopping the video. The section of the video where Appellant admitted to being inside the house had not yet been played. Defense counsel requested a mistrial, which the trial court granted.

Following the mistrial, the Commonwealth obtained additional DNA evidence implicating Appellant. The parties entered into plea negotiations. The Commonwealth sought a plea to third-degree murder and the other charges in exchange for a twenty-five to fifty year sentence. Although represented by counsel, Appellant filed with the court a *pro se* motion to dismiss based on double jeopardy grounds. Defense counsel received that motion but did not pursue it. Thereafter, Appellant entered a *nolo contendere* plea to third-degree murder, theft by unlawful taking, abuse of corpse, tampering with evidence, and unsworn falsification in exchange for a

sentence of twenty-five to fifty years. The court imposed sentence on May 6, 2014.

Appellant, acting *pro se*, wrote to the court complaining of counsel's representation and requested new counsel. That motion was docketed on May 21, 2014. A similar motion was docketed on June 4, 2014. However, prior to that, the court, on May 30, 2014, appointed new counsel. Counsel did not file a direct appeal but submitted a petition for post-conviction relief. Therein, Appellant asserted that counsel rendered ineffective assistance by not moving to dismiss the charges on double jeopardy grounds, which improperly induced him to enter the guilty plea. The PCRA court conducted an evidentiary hearing on July 14, 2014.

The PCRA court denied Appellant's petition, and this timely appeal ensued. The court directed Appellant to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the PCRA court authored its Rule 1925(a) decision. The matter is now ready for this Court's review. Appellant presents one issue for our consideration.

1. Whether the PCRA court erred in denying the Petition for Post-Conviction Relief which argued that the Appellant's trial counsel rendered constitutionally ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and under Article 1, Section 9 of the Pennsylvania Constitution, by improperly inducing the Appellant into entering a no contest plea on May 6, 2014 to the charges of Theft by Unlawful Taking, Murder of the Third

- 4 -

Degree, Abuse of Corpse, Tampering with Physical Evidence, and Unsworn Falsification, by failing to move to dismiss the charges because of a violation of the Double Jeopardy clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and under Article 1, Section 10 of the Pennsylvania Constitution, following the mistrial declaration at the conclusion of his June 2013 jury trial.

Appellant's brief at 3.

In reviewing a PCRA appeal, we consider the record "in the light most favorable to the prevailing party at the PCRA level." *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa.Super. 2014) (*en banc*). In performing this review, we consider the evidence of record and the factual findings of the PCRA court. *Id*. We afford "great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record." *Id.* Accordingly, so long as a PCRA court's ruling is free of legal error and is supported by record evidence, we will not disturb its decision. *Id*. Where the issue presents a question of law, "our standard of review is *de novo* and our scope of review is plenary." *Id.*

Appellant's position relates to the effectiveness of plea counsel. "To plead and prove ineffective assistance of counsel a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." *Commonwealth v. Stewart*, 84 A.3d 701,

- 5 -

706 (Pa.Super. 2013) (*en banc*). The failure to meet any of these aspects of the ineffectiveness test results in the claim failing. *Id*.

A claim has arguable merit where the factual predicate is accurate and "could establish cause for relief." *Id*. at 707. A determination as to whether the facts asserted present a claim of arguable merit is a legal one. *Id*. In considering whether counsel acted reasonably we do not use a hindsight analysis; rather, an attorney's decision is considered reasonable if it effectuated his client's interests. *Id*. Only where "no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success[,]" will counsel's strategy be considered unreasonable. *Id*. Finally, actual prejudice exists if "there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id*.

Appellant argues that, based on **Commonwealth v. Smith**, 615 A.2d 321 (Pa. 1992), and **Commonwealth v. Wood**, 803 A.2d 217 (Pa.Super. 2002), the Commonwealth's actions herein should have precluded a retrial. In **Smith**, the defendant was convicted of murdering a woman and her children but was granted a new trial based upon the erroneous admission of hearsay. After the award of the new trial, Smith discovered that the Commonwealth deliberately withheld material exculpatory evidence. Specifically, the prosecutor intentionally did not inform the defendant about

a plea agreement that it reached with its chief witness, who had actually lied on the witness stand when he denied that the Commonwealth had promised him favorable treatment in return for his testimony. Furthermore, the district attorney deliberately withheld physical evidence that he knew was exculpatory to the defendant because it supported the defendant's theory of the case. Indeed, when a police officer testified about the existence of the evidence, the prosecutor presented testimony from other police witnesses suggesting that the first officer was fabricating his testimony.

The Pennsylvania Supreme Court in **Smith** characterized the actions of the district attorney as egregious and clearly undertaken in bad faith. It discharged the defendant and ruled that "the double jeopardy clause bars retrial following intentional prosecutorial misconduct designed to secure a conviction through the concealment of exculpatory evidence" as well as when a prosecutor intentionally induces a mistrial in order to secure a second chance at conviction when a trial appears to be headed toward acquittal. **Id**. at 322. It concluded that, when the record demonstrates the presence of "prosecutorial misconduct undertaken in bad faith to prejudice or harass the defendant," as opposed to "prosecutorial error," double jeopardy prevents a second trial because there is a "breakdown of the integrity of the judicial proceeding[.]" **Id**. at 324. Under **Smith**, discharge is warranted only when "the conduct of the prosecutor is intentionally

undertaken to prejudice the defendant to the point of the denial of a fair trial." *Id*. at 325.

In **Wood**, this Court remanded for an evidentiary hearing on the defendant's double jeopardy claim. Therein, the victim of a purse snatching died as the result of injuries suffered during the robbery. The trial court granted a mistrial after the defendant alleged that the Commonwealth had failed to disclose both exculpatory and inculpatory evidence. Specifically, the defendant alleged that the prosecutor withheld witness identifications of other potential assailants, conducted unconstitutional identification procedures of Wood, and did not inform him of a witness identification of him as the attacker until that person testified in court. Prior to retrial, the defendant filed a double jeopardy motion, which the trial court denied. As noted, this Court did not resolve the merits of the double jeopardy claim.

In this case, the Commonwealth responds that the prosecutor testified that the playing of the portion of the video that should have been redacted was accidental, and the court credited that testimony. In addition, the Commonwealth contends that trial counsel provided a reasonable basis for not forwarding a double jeopardy challenge. It maintains that counsel testified that he had no basis to conclude the Commonwealth acted intentionally since the strongest part of its case had yet to be presented. Further, the Commonwealth posits that counsel set forth that such a motion

may have inhibited plea negotiations. Thus, it argues that Appellant's claim is meritless.

Prosecutorial misconduct can implicate the double jeopardy clause. Under the federal constitution, the double jeopardy clause prevents a defendant from being retried when a prosecutor deliberately provokes the defendant into moving for a mistrial. *See Oregon v. Kennedy*, 456 U.S. 667 (1982). In the seminal *Smith* decision, our Supreme Court, pursuant to the strictures of the Pennsylvania Constitution, expanded a defendant's double jeopardy protection. *See Commonwealth v. Simone*, 712 A.2d 770, 773 (Pa.Super. 1998).

In *Commonwealth v. Martorano*, 741 A.2d 1221 (Pa. 1999), the Court applied the *Smith* standard and ruled that double jeopardy prevented retrial of the defendants in that case. Therein, the prosecutor engaged in misconduct intentionally undertaken to prejudice defendants to the point of denial of a fair trial. Specifically, during trial, the district attorney was "consistently making reference to evidence that the trial court had ruled inadmissible, continually defying the trial court's rulings on objections, and, in a tactic that can only be described as Machiavellian, repeatedly insisting that there was fingerprint evidence linking [defendants] to the crime when the prosecutor knew for a fact that no such evidence existed." *Id*. at 1227.

Thus, our Supreme Court concluded that the defendants were entitled to discharge under the precepts of **Smith**.

On the other hand, in **Commonwealth v. Burke**, 781 A.2d 1136 (Pa. 2001), our Supreme Court made it clear that prosecutorial conduct does not warrant a new trial unless it is deliberate and egregious and that even gross negligence by the prosecutor does not mandate dismissal of the charges against a defendant. Therein, during the course of the defendant's trial, the Commonwealth learned of evidence in the file of a police detective that was subject to mandatory pretrial discovery. The materials included a statement that the defendant made to police, which was subject to mandatory discovery under the rules of criminal procedure, as well as a statement that the Commonwealth's chief witness had given to police that was exculpatory to the defendant, which must also be automatically revealed to a defendant under the due process clause pursuant to **Brady v. Maryland**, 373 U.S. 83 (1963).

By the time the evidence was given to the defendant, the witness in question had testified and was discharged. The trial court noted that the prosecutor, with a minimal amount of effort, could have uncovered the statements and concluded that the problem was created by circumstances under the Commonwealth's control. The trial court dismissed the action. We reversed, and the Supreme Court "granted *allocatur* to clarify the duty of

prosecutors in securing discovery materials and to examine whether and when dismissal is an appropriate sanction for a discovery violation." ***Id***. at 1140.

In that case, the trial court found the Commonwealth to be grossly negligent and lacking in due diligence in failing to uncover the evidence. We concluded that since the district attorney asked police for the evidence and the police claimed the evidence did not exist, the prosecutor's conduct was innocent. The Supreme Court ruled that, regardless of whether the prosecutor had exhibited gross negligence, such conduct was insufficient to warrant the remedy of dismissal under the ***Smith*** standard. It reaffirmed that discharge is permitted only when the prosecutor's conduct is deliberately designed to deprive the defendant of a fair trial. ***See also Commonwealth v. Kearns***, 70 A.3d 881 (Pa.Super. 2013).

Here, the PCRA court determined that the prosecutor's playing of the tape was accidental. There is support in the record for that position based on the prosecutor's testimony that the PCRA court deemed credible. Since the prosecution's actions herein were not the type of egregious misconduct that occurred in ***Smith***, ***supra*** or ***Mastorano***, ***supra***, counsel cannot be ineffective for failing to pursue a double jeopardy motion. Appellant's claim is without merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/5/2015