J-A28017-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROLAND KITTRELL | : | |
| | : | |
| Appellant | : | No. 735 MDA 2018 |

Appeal from the Order Entered April 30, 2018
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0001435-2010

BEFORE: LAZARUS, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.: **FILED AUGUST 16, 2019**

Appellant, Roland Kittrell, appeals from an order entered on April 30, 2018 in the Criminal Division of the Court of Common Pleas of Centre County. On appeal, Appellant claims that the trial court erred in denying his motion which asserted double jeopardy as a bar to re-prosecution of assault charges stemming from an incident that occurred at SCI-Rockview on December 31, 2009.[1]  For the reasons explained below, we affirm.

On December 31, 2009, Appellant, then an inmate at SCI-Rockview, engaged in a violent altercation with three correctional officers, Lucas S. Nicholas, Timothy Watson, and Rodney Kauffman.  As a result of this incident, the Commonwealth, on July 16, 2010, filed a criminal complaint charging

---

[1] The parties agreed before the trial court that Appellant's double jeopardy motion was not frivolous.  Hence, we may exercise jurisdiction over this appeal from a collateral order.  *See* Pa.R.A.P. 313; Pa.R.Crim.P. 587(B)(6).

Appellant with one count of aggravated assault, 18 Pa.C.S.A. § 2702(a)(2), three counts of aggravated assault, 18 Pa.C.S.A. § 2702(a)(3), and three counts of simple assault, 18 Pa.C.S.A. § 2701(a)(1).

Appellant proceeded to trial *pro se* on January 24, 2011. At the conclusion of a one-day trial, a jury convicted Appellant of three counts of aggravated assault and two counts of simple assault. After the Commonwealth filed notice of its intent to seek a mandatory minimum sentence pursuant to 42 Pa.C.S.A. § 9714(a), the court, on March 15, 2011, sentenced Appellant to an aggregate term of 25 to 50 years' incarceration. On November 18, 2011, this Court affirmed Appellant's judgment of sentence and our Supreme Court denied Appellant's petition for allowance of appeal on March 28, 2012.

Appellant filed a timely Post-Conviction Relief Act ("PCRA") petition pursuant to 42 Pa.C.S.A. §§ 9541-9546 on December 11, 2012. After several amendments, the PCRA court dismissed the petition. This Court affirmed the dismissal of Appellant's PCRA petition on July 24, 2015.

Thereafter, Appellant filed a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 in the United States District Court for the Middle District of Pennsylvania. Among other things, Appellant's petition requested a new trial on grounds that the trial court's waiver of counsel colloquy was deficient and that Appellant did not validly waive his Sixth Amendment rights. The district court granted Appellant's petition and vacated his judgment of sentence on February 20, 2018.

After the district court granted Appellant's *habeas corpus* petition, the Commonwealth declared its intent to retry the case. Thereafter, counsel for Appellant was appointed on March 16, 2018, jury selection took place on April 2, 2018, and a new trial was scheduled to commence on May 2, 2018.

On April 16, 2018, the trial court convened a hearing to consider two *pro se* motions filed by Appellant before the appointment of counsel. Among other things, the motions alleged that the Commonwealth withheld exculpatory evidence, including disciplinary reports for the corrections officers involved in the December 31, 2009 incident. At the conclusion of the hearing, counsel for the Commonwealth agreed to permit Appellant's counsel to review the district attorney's paper file in its entirety on April 18, 2018. On April 20, 2018, following his review, counsel for Appellant filed a motion alleging that intentional misconduct by the prosecution in violation of the principles of double jeopardy barred a second trial and compelled the dismissal of all charges against Appellant.

On April 26, 2018, the trial court convened a hearing to address the Commonwealth's motions *in limine* and Appellant's motion to dismiss. At the hearing, counsel for Appellant introduced several documents that were never disclosed to Appellant before his first trial, including an exchange of emails between the prosecutor and lead investigator as well as a handwritten statement prepared shortly after the December 31, 2009 incident by one of the corrections officers. In addition, the state trooper who led the investigation into the incident testified at the hearing.

The trial court issued findings of fact, conclusions of law, and an order disposing of Appellant's motion on April 30, 2018. Initially, the court found that the Commonwealth withheld evidence from Appellant prior to trial. In relevant part, it stated:

> The court does note, however, that the evidence adduced on April 2[6], 2018 established that, prior to [Appellant's] criminal trial in January 2011, the Centre County District Attorney's Office was aware of the summary harassment charge filed against Sergeant Watson, a material witness and alleged victim in the case against [Appellant], based on the December 31, 2009 incident underlying th[e] criminal action. The evidence further established that [Appellant] was not advised of the summary charge (in which [Appellant] was the alleged victim) [] prior to his criminal trial in the context of pretrial discovery. In addition, the District Attorney's Office was clearly aware of the fact that Sergeant Watson had been the subject of disciplinary proceedings in relation to the December 31, 2009 incident. It further appear[ed] to the [trial court], based on the evidence adduced at the April 26, 2018 hearing and fair inferences therefrom the District Attorney's Office had Sergeant Watson's disciplinary file (or portions thereof, including a three page handwritten statement given by Sergeant Watson) in its possession prior to the time of trial, or at the very least, that it could have procured the file if reasonable efforts had been undertaken to do so.

Trial Court Findings of Fact, Conclusions of Law, and Order, 4/30/18, at 3. Despite these findings, however, the court denied Appellant's motion because the concealed evidence did not satisfy the materiality prong under **Brady v. Maryland**, 373 U.S. 83 (1963).[2] This timely appeal followed.

_____

[2] "[T]o establish a Brady violation, a defendant must demonstrate that: (1) the evidence was suppressed by the Commonwealth, either willfully or inadvertently; (2) the evidence was favorable to the defendant; and (3) the

Appellant raises a single issue for our consideration.

Whether the trial court erred when it denied Appellant's motion to bar retrial and dismiss all charges for violation of double jeopardy due to intentional prosecutorial misconduct on the basis that the evidence suppressed by the Commonwealth was not "material" pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny where the factual findings of the trial court conclude that the prosecution deliberately withheld exculpatory evidence in its possession from the defense?

Appellant's Brief at 8.

"An appeal grounded in double jeopardy raises a question of constitutional law. This court's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is de novo[.]" *Commonwealth v. Vargas*, 947 A.2d 777, 780 (Pa. Super. 2008) (internal citations omitted). If the factual findings of the trial court impact its double jeopardy ruling, we apply a deferential standard to review those assessments:

Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record.

*Commonwealth v. Wood*, 803 A.2d 217, 220 (Pa. Super. 2002), *quoting Commonwealth v. Young*, 692 A.2d 1112, 1114–1115 (Pa. Super. 1997).

---

evidence was material, in that its omission resulted in prejudice to the defendant." *Commonwealth v. Haskins*, 60 A.3d 538, 545 (Pa. Super. 2012), *appeal denied*, 78 A.3d 1090 (Pa. 2013).

This Court has previously outlined the double jeopardy principles that govern the issues presently before us.

> "The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense." **Oregon v. Kennedy**, 456 U.S. 667 (1982). However, the "Double Jeopardy Clause is no bar to retrial" when "the defendant moves for a mistrial[.]" **Id.** at 673. The Supreme Court of the United States has recognized a limited exception to this rule, holding that:

>> [T]he circumstances under which ... a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.

> **Id.**

> Our Supreme Court has determined that the Double Jeopardy Clause of Pennsylvania's constitution provides greater protection than its federal counterpart:

>> [T]he double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial.

> **Commonwealth v. Smith**, 615 A.2d 321, 325 (Pa. 1992).

> As this Court has reflected:

>> The **Smith** standard precludes retrial where the prosecutor's conduct evidences intent to so prejudice the defendant as to deny him a fair trial. A fair trial, of course is not a perfect trial. Errors can and do occur. That is why our judicial system provides for appellate review to rectify such errors. However, where the prosecutor's conduct changes from mere error to intentionally subverting the court process, then a fair trial is denied.

> *Commonwealth v. Chmiel*, 777 A.2d 459, 464 (Pa. Super. 2001).
>
> Thus, under Pennsylvania jurisprudence, it is the intentionality behind the Commonwealth's subversion of the court process, not the prejudice caused to the defendant, that is inadequately remedied by appellate review or retrial. By and large, most forms of undue prejudice caused by inadvertent prosecutorial error or misconduct can be remedied in individual cases by retrial. Intentional prosecutorial misconduct, on the other hand, raises systematic concerns beyond a specific individual's right to a fair trial that are left unaddressed by retrial. As this Court has often repeated, "[a] fair trial is not simply a lofty goal, it is a constitutional mandate, ... [and] [w]here that constitutional mandate is ignored by the Commonwealth, we cannot simply turn a blind eye and give the Commonwealth another opportunity." *Chmiel*, 777 A.2d at 464, *quoting* **Commonwealth v. Martorano**, 741 A.2d 1221, 1223 (Pa. 1999).
>
> It is now well-settled that when a defendant requests a mistrial, the federal Double Jeopardy Clause bars retrial only when "the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." *Kennedy*, 456 U.S. at 679. The additional protections provided under Pennsylvania's Double Jeopardy clause do not extend to non-intentional prosecutorial misconduct, but rather only bar retrial following a defendant's successful motion for a mistrial "when the conduct of the prosecutor [giving rise to the mistrial] is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial." *Smith*, 615 A.2d at 325.

*Commonwealth v. Kearns*, 70 A.3d 881 (Pa. Super. 2013), *appeal denied*, 84 A.3d 1063 (Pa. 2014).

The trial court in this case determined that, "despite the fact that the district attorney's office withheld potentially exculpatory and/or impeachment evidence, [Appellant] did not demonstrate the existence of a reasonable probability that the result of the trial would have been different had the

suppressed evidence been disclosed [before trial]." Trial Court Rule 1925 Opinion, 7/3/18, at 2. In light of this finding, the court declined to determine whether the Commonwealth's failure to produce evidence was motivated by an intent to deprive Appellant of a fair trial. As such, the trial court treated the **Brady** criteria as essential prerequisites to finding the type of prosecutorial misconduct needed to bar a re-trial.

Appellant challenges this analysis. He asserts that where the prosecution deliberately withholds exculpatory evidence, the criteria announced in **Brady** – in particular, the materiality prong – play a diminished role in a court's analysis and cannot be dispositive. Instead, Appellant argues that the controlling inquiry in such cases is the willfulness of the Commonwealth's subversion of the judicial process, not the prejudice to the defendant. **See** Appellant's Brief at 28. According to Appellant, only the dismissal of charges, not appellate review or retrial, constitutes an adequate remedy to the systematic concerns that arise from intentional prosecutorial misconduct undertaken to gain unfair advantage. **Id**.

Appellant relies upon our Supreme Court's decision in **Smith, supra** to support his claims. In **Smith**, the defendant (Smith) was convicted of three counts of first-degree murder and sentenced to death. On direct appeal, our Supreme Court, citing an evidentiary error, vacated Smith's convictions and remanded for a new trial.

Before he could be retried, Smith invoked double jeopardy to bar a second trial based upon newly discovered evidence of prosecutorial misconduct. Specifically, Smith alleged that the Commonwealth knowingly denied an agreement with its chief witness to exchange favorable sentencing treatment for testimony implicating the defendant. This prohibited Smith from impeaching the witness' veracity at trial by exposing his motive to testify falsely. Smith also alleged that the Commonwealth deliberately concealed physical evidence pertinent to the location of the scene of the crime. This evidence was potentially exculpatory and, thus, highly material to the development of Smith's defense at trial.[3] The trial court denied Smith's double jeopardy motion and this Court affirmed. Upon further review, our Supreme Court concluded that a second trial would violate Smith's double jeopardy rights under the Pennsylvania Constitution since "the prosecutor's conduct [] was intended to prejudice the defendant and thereby deny him a fair trial." **Smith**, 615 A.2d at 325.

Our Supreme Court did not elaborate upon the rule it announced in **Smith** or offer a test to assist future courts in determining, precisely, what type of prosecutorial nondisclosures qualified as intentionally prejudicial so as

---

[3] The physical evidence consisted of grains of sand that were discovered between one of the victim's toes at her autopsy. Since it was the prosecution's theory that the murders occurred in Pennsylvania, whereas the defense theorized that the murders took place in Cape May, New Jersey, where another suspect had been but Smith had not, the concealed evidence was potentially exculpatory to Smith.

to implicate double jeopardy protections. From its discussion, however, we infer that the Supreme Court contemplated suppression tactics that violated the principles announced in *Brady*. *See id*. at 322 (noting that the tactics challenged by Smith "were clearly in violation of the rule of [*Brady*]") and 324 (observing that "[Commonwealth's d]eliberate failure to disclose **material** exculpatory physical evidence during a capital trial … constitute[s] prosecutorial misconduct such as violates all principles of justice and fairness embodied in the Pennsylvania Constitution's double jeopardy clause.") (emphasis added). Moreover, throughout its opinion, the Court repeatedly stressed that neither the physical evidence bearing upon the location of the crime scene nor the Commonwealth's agreement with its chief witness were placed before the factfinder to consider at Smith's first trial. Taking these factors into consideration, and bearing in mind the *Smith* Court's declaration that the prosecutor's intentional misconduct must be "undertaken to prejudice the defendant to the point of the denial of a fair trial," *Smith*, 615 A.2d at 325, we are persuaded that only suppression tactics that undermine confidence in the outcome of a trial constitute nondisclosure that triggers double jeopardy protections.

Based upon our review of the certified record before us, we conclude that this case is distinguishable from *Smith* inasmuch as the nondisclosures alleged here do not fall within the class of nondisclosures identified in *Smith* as triggering the protections of the double jeopardy clause of the Pennsylvania

Constitution.  The trial court in this case concluded that the Commonwealth intentionally withheld documents from Appellant prior to his trial but that Appellant was not entitled to relief since the omissions were not prejudicial. The documents at issue confirm that one of the corrections officers struck Appellant while he was handcuffed during the December 31, 2009 incident.[4] They also reveal that the officer received a summary harassment citation and was subject to disciplinary procedures as a result of this conduct.  As the trial court and the Commonwealth point out, however, the officer conceded many times at both the preliminary hearing and before the jury at trial that he struck Appellant at the conclusion of the altercation and received discipline for his actions.  *See* N.T. Preliminary Hearing, 7/28/10, at 49-52; *see also* N.T. Trial, 1/24/11, at 120, 145, and 152.  Appellant does not dispute that the jury heard these multiple concessions by the officer, nor does Appellant challenge the trial court's materiality finding.  Instead, Appellant simply argues that in view of the Commonwealth's deliberate concealment of certain documents, the materiality of the suppressed items should play a diminished role in our

---

[4] Unlike the suppressed physical evidence in **Smith** that related to the location of the scene of the murders and supported Smith's defense at trial, the documents omitted here did not support any defense Appellant advanced at trial.  The evidence showed that the corrections officers handcuffed Appellant after he was subdued following the altercation and that one of the officers then struck Appellant to prevent him from spitting in the officer's face.  Since the undisclosed documents here pertained only to events that occurred after Appellant's assaults concluded, they could not have supported a self-defense claim.

analysis. This position is inconsistent with our reading of **Smith** and is foreclosed by the applicable standards for pre-trial disclosure under our rules of criminal procedure, as we discuss below.

Our rules of criminal procedure incorporate both **Brady**'s language and rationale (including its materiality requirement) in describing the Commonwealth's duty to make disclosure prior to trial. Rule 573(B) states in pertinent part:

> **(B) Disclosure by the Commonwealth.**
>
> (1) **Mandatory**. In all court cases, on request by the defendant,[5] and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, **provided they are material to the instant case**. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.
>
> (a) Any evidence favorable to the accused that is **material** either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth[.]

Pa.R.Crim.P. 573(B) (emphasis added). Since our discovery rules for criminal cases provide that only "material" evidence shall be subject to mandatory disclosure, we shall assume that a showing of materiality is necessary to

---

[5] On August 25, 2010, trial counsel for Appellant served an informal discovery request on the Centre County District Attorney's office pursuant to Pa.R.Crim.P. 573.

demonstrate prosecutorial misconduct in the failure to produce evidence prior to trial.

Our prior decision in **Haskins** summarized the relevant principles that guide a court in determining whether suppressed evidence is material to the defense:

> To demonstrate prejudice, "the evidence suppressed must have been material to guilt or punishment." **Commonwealth v. Gibson**, 951 A.2d 1110, 1126 (Pa. 2008). Evidence is material under **Brady** when there is a reasonable probability that, had the evidence been disclosed, the result of the trial could have been different. **Kyles v. Whitley**, 514 U.S. 419, 433–434 (1995). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial does not establish materiality in the constitutional sense." **Commonwealth v. McGill**, 832 A.2d 1014, 1019 (Pa. 2003), *quoting* **U.S. v. Agurs**, 427 U.S. 97 (1976). The relevant inquiry is "not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." **Kyles**, 514 U.S. at 434. To prove materiality where the undisclosed evidence affects a witness' credibility, a defendant "must demonstrate that the reliability of the witness may well be determinative of [the defendant's] guilt or innocence." **Commonwealth v. Johnson**, 727 A.2d 1089, 1094 (Pa. 1999).

**Haskins**, 60 A.3d at 547 (parallel citations omitted).

Reviewing the evidence in its totality, we cannot conclude that the absence of the suppressed materials resulted in a verdict unworthy of confidence. The corrections officer to whom the suppressed materials relate repeatedly admitted at trial that he struck Appellant toward the conclusion of the altercation and after Appellant was handcuffed. Additionally, the officer

admitted that he faced disciplinary action for his conduct. The jury heard this evidence and, nevertheless, returned a guilty verdict. Appellant forwards no claim that the reliability of the corrections officer was determinative of guilt, that prior disclosure of the suppressed documents would have placed the officer's credibility beyond rehabilitation, or that pre-trial disclosure would have altered Appellant's strategy at trial. In the absence of such factors, Appellant has not come forward with meritorious grounds for reversal.

Although we conclude that the trial court did not err in considering the materiality of the undisclosed documents and in denying relief, we cannot overstate our disapproval of the Commonwealth's conduct in the prosecution of this case.[6] The electronic mail exchanges between the assistant district attorney's office and the lead investigator demonstrate that both officials blithely disregarded the duties of their respective offices. In short, their actions displayed contempt for the judicial process they are sworn to uphold. *See Commonwealth v. Starks*, 416 A.2d 498, 500 (Pa. 1980) ("In contrast to prosecutorial error, overreaching is not an inevitable part of the trial process and **cannot** be condoned.") (emphasis added). But for the disclosure of the substance of the concealed materials at Appellant's trial and the fact that the undisclosed materials would not have altered the trials' outcome, we would

---

[6] We hasten to note that the current elected District Attorney in Centre County is not same District Attorney who administered that office at the time Appellant's case was prosecuted.

not hesitate to conclude that the prosecution in this case purposefully undertook a course of action intended to prejudice Appellant by denying him a fair trial.

Order affirmed.  Case remanded for trial.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/16/2019